**BRUSH WELLMAN, INC., Plaintiff,**

v.

**DEPARTMENT OF LABOR, Defendant.**

**No. C78–1505.**

United States District Court,
N. D. Ohio, E. D.

Oct. 8, 1980.

John M. Newman, Jr., Jones, Day, Reavis & Pogue, Cleveland, Ohio, for plaintiff.

Patrick M. McLaughlin, Asst. U. S. Atty., Cleveland, Ohio, for defendant.

## MEMORANDUM

BEN C. GREEN, Senior District Judge:

Plaintiff, Brush Wellman, Inc. (hereafter Brush), filed this action against the United States Department of Labor (hereafter D.O.L.) and several other defendants [1] pursuant to the Freedom of Information Act (hereafter F.O.I.A.), 5 U.S.C. § 552.

After a lengthy delay, documented in several prior orders of this Court, discovery is now complete. The parties have filed cross–motions for summary judgment in which the merits of the case are presented for decision.

Brush seeks an order from this Court enjoining D.O.L. from withholding certain documents generated in the course of a D.O.L. rulemaking proceeding. The defendant claims the documents are exempt from mandatory disclosure under 5 U.S.C. § 552(b)(5) as predecisional deliberative material.

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment upon a claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. In deciding whether the summary judgment is appropriate the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.

The Court has carefully examined the extensive record in this case and finds the following undisputed facts as to how the administrative process generated the documents sought by plaintiff. *See, National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975).

Brush is one of two primary producers of beryllium in the non–Communist world.

On October 17, 1975 the Occupational Safety and Health Administration (hereafter O.S.H.A.), a D.O.L. subdivision, opened the rulemaking proceeding to issue a new standard for occupational exposure to beryllium pursuant to authority granted in 29 U.S.C. §§ 651 *et seq.* The first step in the rulemaking proceeding was the issuance of a proposed Occupational Safety and Health standard for exposure to beryllium, 40 Fed. Reg. 45934 (1975) (hereafter proposed standard).

After the proposed standard was issued, interested parties were given an opportunity to comment upon it at a public hearing. These comments were included in the rulemaking record.

Also included in the rulemaking record pursuant to the mandate of Executive Order 11821 was an analysis of the technological feasibility, costs of compliance, and economic impact of the proposed standard

---

1. The other defendants were dismissed in this Court's order dated August 17, 1979.

(hereafter economic impact statement). O.S.H.A. retained a private consulting firm, Bolt, Beranek and Newman, Inc. (hereafter B.B.N.), to prepare this economic impact statement. Having received the contract, B.B.N. submitted to D.O.L. a detailed "Statement of Work" or "Task Order" which set forth the procedure for producing the economic impact statement.

B.B.N. began work on the economic impact statement in mid–December, 1975. By the end of February, 1976 B.B.N. had visited the primary producers of beryllium (including Brush), completed their engineering work and submitted a first draft. O.S.H.A. transmitted comments to B.B.N. and a second draft was submitted in May, 1976. On the second draft B.B.N. received comments from the Office of the Assistant Secretary of Labor for Policy Evaluation and Research (hereafter A.S.P.E.R.), Arthur Young & Company, which had been retained by O.S.H.A. to review economic impact statements, and O.S.H.A. A third draft was submitted in late September, 1976. Following some additional comments from the reviewers a fourth and final draft was submitted in January, 1977. In April, 1977 O.S.H.A. published the report under the title of *Economic Impact Statement: Beryllium* (hereafter final statement).

In July, 1978 Brush requested that O.S.H.A. release the B.B.N. drafts of the economic impact statement and any other documents which pertained to or referred to the drafts, including any comments made by O.S.H.A. or its agents.

In August, 1978 D.O.L. rejected plaintiff's request, citing 5 U.S.C. § 552(b)(5).

After exhausting its administrative remedies plaintiff filed the present action under authority of 5 U.S.C. § 552(a)(4)(B).

D.O.L. has voluntarily released many of the requested documents but continues to withhold ten others,[2] including all of the B.B.N. drafts of the economic impact statement.

5 U.S.C. § 552(a)(4)(B) provides that in a F.O.I.A. action:

1. the burden of proof is on the agency;
2. the district court is to determine the matter *de novo*; and,
3. the court may examine the disputed records *in camera*.

The purpose of the F.O.I.A. is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 136, 95

**2.** The withheld documents are:

| Document | Number of Pages |
|---|---|
| 1. Bolt, Beranek and Newman, Inc. Draft Statement, February 19, 1976 with O.S.H.A. staff comments. | 211 |
| 2. B.B.N. to Bell 5/7/76 regarding Draft Statement. | 1 |
| 3. Bolt, Beranek and Newman, Inc. Draft Statement, May 7, 1976 with O.S.H.A. staff comments. | 261 |
| 4. Steve Witt to Plionis 6/11/76 comments on Draft Statement, 5/7/76. | 1 |
| 5. Memo Aldona DiPietro (A.S.P.E.R.) to Wrenn and Bell, 8/19/76. Comments on Draft Statement. | 143 |
| 6. Bolt, Beranek and Newman, Inc., Draft Statement October, 1976. | 197 |
| 7. Bob Bruce to Wrenn 11/12/76 changes to Draft Statement. | 8 |
| 8. Bolt, Beranek and Newman, Inc., Draft Statement January, 1977 with O.S.H.A. staff comments. | 237 |
| 9. Analysis of Report Entitled "Technological Feasibility Assessment and Inflationary Impact Statement of the Proposed Beryllium Regulation." Prepared by Daniel J. B. Mitchell of the Institute of Industrial Relations, U.C.L.A. October, 1976. | 12 |
| 10. Comments on Technological Feasibility Assessments and Inflationary Impact Statement of the Proposed Beryllium Regulation. Prepared by Michael L. Wachter of the University of Pennsylvania. 11/18/76. | 6 |

S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975), *quoting from* S.Rep.No. 813, 89th Cong., 2nd Sess., 3 (1965).

The F.O.I.A. requires government agencies to make public "those statements of policy and interpretation which have been adopted by the agency and are not published in the Federal Register." 5 U.S.C. § 552(a)(2)(B). It also provides that "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules . . ., shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3). However, 5 U.S.C. § 552(b)(5) exempts from disclosure "inter–agency or intra–agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

■ The purpose of the (b)(5) exemption is to protect the quality of agency decisions by ensuring that agency advisors will be able to freely express their opinions to the agency decision–makers without fear of publicity. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); *National Labor Relations Board v. Sears, Roebuck & Co.,* supra, 421 U.S. at 151, 95 S.Ct. at 1516. Accordingly, predecisional communications are exempt from disclosure while "communications made after the decision and designed to explain it, . . . are not." *Ibid.* Likewise, purely factual material, which is severable from the rest of a document otherwise reflecting a predecisional policy, must be disclosed. *Environmental Protection Agency v. Mink, supra*, 410 U.S. at 91, 93 S.Ct. at 837.

Although the purpose of the (b)(5) exemption is clear, its application to particular fact situations is often difficult. The Sixth Circuit recently said in *Parke, Davis & Company v. Califano*, 623 F.2d 1, 5 (C.A. 6, 1980):

The statutory language appears to shield from compulsory disclosure those inter–agency and intra–agency documents which a private party in litigation with the agency would not be able to reach by discovery. However, as the Supreme Court has recognized, discovery rules are a subject of uncertainty and disagreement and "at best, the discovery rules can only be applied under Exemption 5 by way of rough analogies. (citation omitted).

■ Before discussing the merits of this action the Court notes that the documents at issue in this case are intra–agency memoranda, even though they were prepared for D.O.L. by outside consultants. *Soucie v. David*, 448 F.2d 1067, 1078 n. 44 (C.A.D.C., 1971); *Lead Industries Association, Inc. v. Occupational Safety and Health Administration*, 610 F.2d 70 (C.A. 2, 1979).

The issue now becomes: Are the disputed documents predecisional, deliberative material which would not be discoverable by a private party in litigation with the agency?

One method of answering this question would be to conduct an *in camera* examination of the documents. 5 U.S.C. § 552(a)(4)(B). However, while "[p]lainly, in some situations, *in camera* inspection will be necessary and appropriate . . . it need not be automatic." *Mink, supra*, 410 U.S. at 92–93, 93 S.Ct. at 838. And:

[w]here it is clear from the record that an agency has not exempted whole documents merely because they contained some exempt material, it is unnecessary and often unwise for a court to undertake such an examination. *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 696–698 (C.A.D.C., 1977), *quoted in Lead Industries Association, Inc. v. Occupational Safety and Health Administration*, 610 F.2d 70, 88 (C.A. 2, 1979).

In light of the detailed affidavits and extensive depositions which make up the record in this case and for reasons which will be made clear later in this opinion, the Court finds it unnecessary to conduct an *in camera* examination.

David R. Bell, the D.O.L. disclosure officer who processed Brush's F.O.I.A. request, swore in an affidavit that the reason he determined not to disclose documents numbered 1–8 in footnote 2 of this opinion:

... was my belief that release of the documents would impair the Department's ability to protect the safety and health of American workers, a mission which it has been given under the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* In order to formulate standards aimed at achieving this objective, the Department must be able to utilize a wide range of expertise. This expertise comes from the Department's own employees and from other consultants it utilizes.

... [I]n partially denying ... [plaintiff's] request, I was concerned not only about the detrimental impact release of the requested records would have on the specific rule–making involving beryllium, but also the effect release might have on the process which is utilized to formulate all health and safety standards. Specifically, the Department would be significantly hampered in its ability to obtain the expertise ... [from D.O.L.'s own employees and outside consultants] unless the experts can be insured that their writings will remain confidential. Consultants such as BBN would be understandably concerned about their professional reputations if they are publicly associated with these often–unpolished draft reports, since they contain tentative views and may be based on unverified information. Because of this reluctance, few, if any consultants, would enter into contractual arrangements with the Department of Labor that would require them to make available their early drafts. Thus, OSHA would be deprived of an opportunity to engage in a "give–and–take" with its consultants during the early stages of the rule–making process. It is for this reason that OSHA has an understanding with its consultants not to disclose the consultant's drafts, and that to the best of my knowledge, this practice was followed by the Department and OSHA with respect to the records involved in this suit.

Another reason why I partially denied ... [plaintiff's] request was because release of the withheld records would re-

veal the input and mental processes of OSHA staff who worked with or reviewed the drafts produced by BBN. Certainly, release of comments prepared by Department of Labor staff on the drafts would have this result. In addition, the release of the drafts themselves would also impair the agency's decisional process; a comparison of successive revisions of the drafts would inherently reveal the substance of discussions between OSHA and BBN on revisions that should be made in each draft. Thus, disclosure of the records sought by the plaintiff would inhibit the full and frank exchange of ideas, views, and opinions necessary for the making of informed decisions on health standards by agency officials.

Mr. Bell stated that his reason for refusing to release documents 9 and 10 listed in footnote 2 of this opinion was that:

... their sole purpose is to comment upon the draft statements prepared by BBN. Thus, disclosure of these reports, ..., would inherently reveal the substance of the draft technological feasibility and economic impact statements, the documents which are central to this action. The agency needs input from the peer reviewers prior to finalizing and publishing the final statement. If the Department were to reveal the evaluations of the draft statements, it is my opinion that the peer reviewers would be reluctant to candidly communicate their views and analyses to OSHA. Thus, disclosure would significantly impair the decisional process of the agency by depriving it of an important source of expertise during the formulation of the technological feasibility and economic impact statements.

In the Court's opinion, this affidavit and the rest of the record demonstrates that the documents which D.O.L. has refused to release are predecisional. It is the D.O.L., not B.B.N., which has the authority to promulgate health and safety standards and the final statement. 29 U.S.C. § 655; Executive Order 11821. All of the disputed documents in this case were generated be-

fore the final statement was issued and were used by D.O.L. to prepare the final statement. For this reason, the disputed documents must be considered as predecisional.

The next question is: Are the documents deliberative?

Brush argues that the documents are scientific or expert evaluations and not policy recommendations and are thus subject to disclosure. In support of this argument Brush cites the recent case of *Parke, Davis & Company v. Califano, supra.*

The *Parke, Davis* case grew out of a F.O.I.A. request directed to records of the Food and Drug Administration. The company sought certain documents generated in the course of its efforts to get one of its prescription drugs approved for over–the–counter sales. The government denied the request and asserted the (b)(5) exemption.

The district court ordered disclosure of all of the documents.

On appeal, the Sixth Circuit held that all of the documents at issue were predecisional. However, the court found that the government had failed to meet its burden of showing that the documents were part of the deliberative process.

The court noted that the documents submitted by the government in support of the exemption were "couched in conclusory terms."

The court then said:

The fact that a document contains advice or recommendations from a subordinate is not enough. The district court must know how each document fits into the deliberative process, and whether it is an essential element of that process or possibly a peripheral item which just "beefs up" a position with cumulative materials. As all courts and commentators have agreed, the overwhelming thrust of FOIA is toward complete disclosure. We require specificity and detail in support of an Exemption 5 claim. Earlier in this opinion we attempted to set forth the drug approval procedures of FDA. However, we were limited to the procedures set forth in the statute and regulations. FDA has not filed a handbook or a manual or statement of internal operating procedures. Neither the documents nor the affidavits identify the precise responsibilities or the exact role in the approval process of the authors or addresses of the letters and memoranda. (citation omitted). The ultimate burden which FDA must carry is to show that information of the type it seeks to withhold would not flow freely within the agency unless protected from public disclosure. (citation omitted). *Id.* at p. 6.

With two exceptions, the court affirmed the district court's order.

Contrary to the situation in *Parke, Davis* the record in the present case adequately informs the Court as to how each document fits into the deliberative process and why each document is an essential element of that process.

■ In an early portion of this opinion the Court set forth undisputed facts regarding the process which generated the documents. These facts establish that D.O.L. had the responsibility for issuing the final feasibility study and that D.O.L. relied heavily on its consultant, B.B.N., to accomplish this task. Without the drafts and the reviewer comments on those drafts D.O.L. would have been greatly hindered in its effort to issue the final statement. Therefore, the Court concludes that each of the withheld documents was essential to D.O.L.'s deliberative process.

Furthermore, the Court concludes that D.O.L. has met its burden of showing that information of the type it seeks to withhold would not flow freely within the agency unless protected from public disclosure.

In answers to interrogatories David Bell said:

... BBN prepared numerous drafts of the feasibility study, which were analyzed by the Department and resubmitted to BBN for revision. Many of these drafts were submitted while they were in tentative form, and were occasionally requested by the Department in advance of

BBN's plans to submit them, so that the Department could assure expeditious completion of BBN's work.

Mr. Bell concluded that public disclosure of the drafts would prevent the free flow of information between the consultant and O.S.H.A. The Court agrees.

Neither does the Court believe that any of the factual material contained in these predecisional deliberative documents is severable. Disclosure of the factual portions of these documents would reveal the selection process by which D.O.L. formulated its final economic impact statement.

In a similar factual setting the *Lead Industries* court said by way of advice to the district court:

> [I]nstead of merely combing the documents for purely "factual tidbits", the court should have considered the segments in the context of the whole document and that document's relation to the administrative process which generated it . . . If the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so. *It might facilitate LIA's attack on the standards if it could know in just what respects the Assistant Secretary departed from the staff reports she had before her. But such disclosure of the internal workings of the agency is exactly what the law forbids.* 610 F.2d 70, 86. (emphasis supplied) (citations omitted).

*Lead Industries* is the only other case in which the public disclosure of economic impact statements has been at issue. That case involved a request by a trade association for certain documents generated in the course of a D.O.L. rule–making proceeding for occupational exposure to lead. One set of documents in the possession of the Council of Wage and Price Stability was those "relating or referring to the cost, feasibility and/or economic or inflationary impact of the Standard." The district court ordered disclosure of certain "factual" segments of these documents. *Id.* at 81, 84. The Court of Appeals reversed, holding that these documents were entirely exempt from disclosure by the (b)(5) exemption.

On the basis of all the foregoing this Court concludes that the documents withheld by D.O.L. in this action are exempt from disclosure by virtue of 5 U.S.C. § 552(b)(5).

One issue remains: Is Brush entitled to the documents it has requested notwithstanding the fact that the documents fall within the ambit of exemption (b)(5)?

During his deposition, David Bell was presented with several documents unrelated to the beryllium rule–making proceedings. Upon examination these documents were characterized by Mr. Bell as exempt from disclosure by reason of 5 U.S.C. § 552(b)(5). Brush apparently obtained these documents from other F.O.I.A. requesters who received the documents from D.O.L.

In its motion for summary judgment Brush argues that D.O.L.'s refusal to disclose to Brush the same general types of documents which were released to others is arbitrary conduct which violates due process.

██ This Court is unaware of the precise circumstances under which these alleged comparable documents were released. Assuming for the sake of argument that they could have been shielded from public view if the agency had resisted disclosure, its failure to do so is not binding on future conduct. Were the Court to accept Brush's argument "agency law could never be improved as a result of experience but would be burdened forever with its encrusted errors." *Maxwell Company v. National Labor Relations Board,* 414 F.2d 477, 479 (C.A. 6, 1969). The Court has already determined that release of the documents would inhibit the free flow of information within D.O.L. The Court is unwilling to deprive D.O.L.'s decision–makers of important information as a penalty for their possible past errors.

In view of this holding it is unnecessary for the Court to undertake an extensive

investigation into the circumstances surrounding the release of those other documents. It may be that an investigation would show that the beryllium documents withheld here are not analogous to the documents released in other rule–making proceedings. However, in view of the foregoing ruling, such an investigation is unnecessary.

The Court holds that the other arguments made by Brush in support of their motion are without merit.

In conclusion, the Court finds that D.O.L. properly refused to release all of the disputed documents. An order will be entered denying plaintiff's motion for summary judgment and granting defendant's motion for summary judgment.

### ADDENDUM

| | |
|---|---|
| D.O.L. | Department of Labor |
| F.O.I.A. | Freedom of Information Act |
| O.S.H.A. | Occupational Safety and Health Administration |
| B.B.N. | Bolt, Beranek and Newman, Inc. |
| A.S.P.E.R. | Assistant Secretary of Labor for Policy Evaluation and Research |
| F.D.A. | Federal Drug Administration |
| L.I.A. | Lead Industries Association |