482 S.E.2d 180

**The DAILY GAZETTE COMPANY, INC., a West Virginia Corporation, Plaintiff Below, Appellant,**

v.

**The WEST VIRGINIA DEVELOPMENT OFFICE and its Director, Thomas C. Burns, Defendants Below, Appellees.**

No. 23560.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 1, 1996.

Decided Dec. 13, 1996.

Suzanne M. Weise, Patrick C. McGinley, Morgantown, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Donald L. Darling, Senior Deputy Attorney General, Charleston, for Appellees.

McHUGH, Chief Justice:

The Daily Gazette Company, Inc. (hereinafter "Gazette") instituted this action under the West Virginia Freedom of Information Act, *W. Va.Code*, 29B–1–1, *et seq.*, to obtain certain documents in the possession of the West Virginia Development Office. Though the Circuit Court of Kanawha County released certain documents to the Gazette in their entirety, it also withheld certain other documents, either in whole or in part, pursu-

ant to *W. Va.Code*, 29B–1–4(8) [1977], which exempts from public disclosure "[i]nternal memoranda or letters received or prepared by any public body."

This Court[1] has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons discussed below, this case is remanded with directions.

## I.

By letters dated February 9, 1995, March 8, 1995 and March 24, 1995, the Gazette, the appellant herein, made requests of the appellees, the West Virginia Development Office and its director, Thomas C. Burns (hereinafter collectively referred to as "Development Office"), under the West Virginia Freedom of Information Act, *W.Va.Code*, 29B–1–1, *et seq.* (hereinafter "WVFOIA"), seeking access to information regarding a pulp mill proposed for construction in Mason County, West Virginia, by Apple Grove Pulp & Paper Co. and its parent company, Parsons and Whittemore. In response to the Gazette's WVFOIA requests, the Development Office released some documents but withheld others, on the ground that the withheld documents were "[i]nternal memoranda or letters received or prepared by any public body[,]" *W. Va.Code*, 29B–1–4(8) [1977], and were, therefore, specifically exempt from disclosure under WVFOIA.

In May of 1995, the Gazette filed a complaint in Kanawha County Circuit Court in an effort to, *inter alia*, compel disclosure of the withheld documents. *See W. Va.Code*, 29B–1–3(4) [1992] and 29B–1–5 [1977]. Following a July 7, 1995 hearing on the matter, the circuit court entered an order on July 12, 1995 which, *inter alia*, indicated that the Development Office had failed to meet its burden of showing that the withheld documents were, in fact, exempt under *W. Va. Code*, 29B–1–4(8) [1977]. *See W. Va.Code*, 29B–1–5(2) [1977]("[T]he burden is on the public body to sustain its action." *Id.*, in relevant part).

Also in its July 12, 1995 order, the circuit court, notwithstanding its finding that the Development Office had failed to show that the withheld documents were exempt from disclosure under *W. Va.Code*, 29B–1–4(8) [1977], appointed a special master to review the withheld documents *in camera* and to determine whether they were exempt from disclosure under *W. Va.Code*, 29B–1–4(8) [1977]. Finally, the July 12, 1995 order directed the Development Office to prepare a *Vaughn* index,[2] which was to include the general description and date of each withheld document. In addition, the Development Office was "invited" to submit detailed affidavits containing specific reasons as to why each withheld document was claimed exempt.[3]

The *Vaughn* index subsequently submitted by the Development Office revealed that the Development Office was withholding from disclosure approximately 155 documents.[4] An affidavit dated July 24, 1995 and submit-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. A *Vaughn* index, named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), requires "that when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a

withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977). However, the information provided need not be so detailed that it compromises the privilege claimed. *See Church of Scientology v. U.S. Dept. of the Army*, 611 F.2d 738, 742 (9th Cir.1979). *See also* Discussion, *infra*.

3. The documents withheld in their entirety and the exempt portions of the documents disclosed in part are not a part of the record in this case and are, therefore, not available for our review.

4. By order of August 3, 1995, the circuit court ordered the Development Office to provide a copy of the *Vaughn* index to the Gazette, to "allow [the Gazette] to make a more meaningful presentation of argument in this litigation."

ted under seal by the Development Office set forth the reasons the documents were withheld.[5]

In his report filed September 11, 1995, the special master, previously appointed by the circuit court to review each of the withheld documents, recommended disclosure of certain documents in their entirety, disclosure of certain other documents after specific information therein, deemed exempt from disclosure under *W. Va.Code*, 29B–1–4(8) [1977], was redacted, and the withholding of certain documents in their entirety, also pursuant to *W. Va.Code*, 29B–1–4(8) [1977]. The circuit court subsequently adopted the special master's report.[6]

On October 5, 1995, the circuit court conducted another hearing, during which the Development Office was provided the opportunity to show that the withheld documents were exempt from disclosure under *W. Va. Code*, 29B–1–4(8) [1977]. On November 21, 1995, the circuit court issued a memorandum letter opinion indicating, *inter alia*, that "[c]ertain of these documents are entitled to partial exemption under [WVFOIA], after redaction, and certain of these must be disclosed to the [Gazette]. Copies of the documents in each category are retained in [the circuit court's] office for inspection by [the Development Office]." The circuit court's opinion letter also set a final hearing for December 13, 1995 and ordered the Development Office's July 24, 1995 affidavit unsealed "to enable [the Gazette] to participate in the adversarial process[.]"[7]

In its final order entered December 14, 1995,[8] the circuit court ordered approximately 86 of the documents to be disclosed to the

Gazette in their entirety; approximately 42 of the documents to be disclosed after exempt portions thereof were redacted; and approximately 25 documents to be completely withheld from disclosure, as such documents were exempt under *W. Va.Code*, 29B–1–4(8) [1977].

The Development Office subsequently made an oral motion seeking a thirty-day stay of the circuit court's December 14, 1995 order so that it could file a petition for appeal with this Court. The circuit court denied the Development Office's motion but, over the Gazette's objection, stayed its order until December 22, 1995.

The Development Office immediately filed with this Court an application for stay of the circuit court's order to allow it reasonable time to file a petition for appeal. This Court granted a stay of the circuit court's order, but only until January 3, 1996, pending a hearing by the circuit court regarding whether a further stay should be granted or denied. This Court ordered the circuit court "to make findings on the issue of balancing the benefit of the information to the public as opposed to protecting the government's interest in keeping the documents which are the subject of the proceedings below confidential."

A hearing was conducted on December 28, 1995 and the circuit court's ruling was rendered orally, on the record, on December 29, 1995. The circuit court ultimately concluded that release of the documents previously ordered disclosed under WVFOIA would not harm either the Development Office or the State of West Virginia.[9] By order of January 11, 1996, this Court denied the Develop-

---

5. When this petition was filed with this Court, it was unclear whether the *Vaughn* index and the July 24, 1995 affidavit were actually made a part of the record in this case. By stipulation filed with this Court on November 18, 1996, the parties indicated that these documents should be made part of the record for consideration by this Court on appeal.

6. Both the Development Office and the Gazette filed exceptions to the special master's report.

7. The circuit court's opinion letter also afforded the parties the opportunity to file objections or exceptions thereto.

8. We note that the circuit court subsequently entered a final *corrected* order on December 18, 1995. However, the parties and the circuit court refer to the December 14, 1995 order as the circuit court's final order. To avoid confusion, this Court will likewise refer to the final order as the December 14, 1995 order.

9. In its application for stay filed with this Court on December 18, 1995, the Development Office claimed, *inter alia*, that it "would be irreparably harmed through the chilling effect disclosure of [the documents deemed non-exempt under *W. Va.Code*, 29B–1–4(8) [1977]] would have on the pulp mill project and other pending and potential projects." As indicated above, this Court direct-

ment Office's motion for an extension of the stay of the circuit court's December 14, 1995 order.

The Gazette appeals the December 14, 1995 order only insofar as it allows the De-velopment Office to withhold portions of seven enumerated documents and ten documents in their entirety, under *W.Va.Code*, 29B–1–4(8) [1977].[10]

ed the circuit court "to make findings on the issue of balancing the benefit of the information to the public as opposed to protecting the government's interest in keeping the documents which are the subject of the proceedings below confidential."

At the December 28, 1995 hearing on the matter, testimony was elicited from Development Office witnesses regarding whether release of the documents previously deemed nonexempt and ordered disclosed would harm the Development Office or the State of West Virginia. Following the December 28, 1995 hearing, the circuit court concluded:

> Contrary to the [Development Office's] general assertion of harm by the publication of information received via the [Gazette's] [WVFOIA] request, no specific evidence of such harm was introduced by the [Development Office] and the evidence consisted of conclusory statements related to the harm the agency alleged it would suffer if the withheld documents were released to the public.
>
> This Court before reaching the balancing pivotal point finds that the broad representations of harm recited by the Defendant, Development Office, to be incredible insofar as the conclusory presentations lacked specificity and the conclusory presentations are based upon broad speculation that a potential developer or entrepreneur will recoil from locating in the state if certain stale portions of its negotiations are presently made public. The witnesses have produced, cited no empirical data or scholarly opinion in support of such occurrences.
>
> Therefore this Court finds that compelled release of the information directed to be disclosed would not harm the function of the West Virginia Development Office or the goals of the State of West Virginia in view of the claimed exemptions that were upheld, and in view of the redactions ordered by this Court.

As indicated above, the circuit court determined that neither the Development Office nor the State of West Virginia would be harmed *if the documents previously found not to be exempt were in fact released.* However, both the Gazette and the Development Office, on appeal, address this issue in a manner inconsistent with the circuit court's conclusion. Both parties essentially maintain that the issue at the December 28, 1995 hearing was whether the documents found *to be exempt under W.Va.Code, 29B–1–4(8) [1977] should nevertheless be disclosed upon balancing the public's right to know against the harm to the Development Office.* After careful review of the hearing transcript, and in particular, the quoted portions above, we believe that the parties' arguments do not accurately reflect what was actually determined at the circuit court proceedings on

December 28 and 29, 1995. Obviously, the important issue to be determined on this appeal relates to which documents are exempt as opposed to which documents are not exempt.

10. According to the Gazette's Exhibit A, attached to its Petition for Appeal, the Gazette seeks, on appeal, access to a total of 17 documents from the Development Office's files. These numbered documents were listed and described in the Development Office's "Index of Documents," or *Vaughn* index.

The following documents to which the Gazette seeks access were withheld from disclosure in their entirety:

Document # 33: Letter dated June 23, 1989, from C. Kenneth Goddard (Vice President of Apple Grove Pulp Mill Co., Inc.) to James Christie (Development Office employee).

Document # 34: Fax cover page and letter from C. Kenneth Goddard to James Christie enclosing letter from Andres Datko of Aptus (incinerator company) to Goddard.

Document # 49: Fax cover page from Rolland Phillips (Development Office employee) to C. Kenneth Goddard enclosing draft letter to Governor Gaston Caperton.

Document # 60: Fax cover page dated September 14, 1989, from C. Kenneth Goddard to Rolland Phillips, enclosing draft letter to Goddard from Phillips.

Document # 64: Letter dated December 11, 1989, from C. Kenneth Goddard to John Ranson (state agency secretary).

Document # 68: Letter dated December 7, 1989, from C. Kenneth Goddard to Charles Lorenson (W.Va. Tax Commissioner), enclosing property tax evaluation.

Document # 72: Handwritten note dated March 16, 1990, enclosing draft letter from John Ranson to C. Kenneth Goddard.

Document # 73: This document appears to be a final version of document number 72.

Document # 87: Executive summary of wood study provided to the State of West Virginia by Parsons & Whittemore.

Document # 125: Letter from C. Kenneth Goddard to Frank Lee, Mason County Development Authority, and Rolland Phillips.

According to the Gazette, it seeks access to the following documents, portions of which were disclosed. The remaining, exempt portions were deleted and withheld:

Document # 9: Final version of [former] Governor Arch A. Moore's letter to Parsons & Whittemore President George Landegger.

Document # 44: Letter from C. Kenneth Goddard to Rolland Phillips regarding super Tax Credit evaluation.

## II.

The Gazette seeks access, under WVFOIA, *W.Va.Code*, 29B–1–1, *et seq.*, to certain enumerated documents from the Development Office's files. As indicated above, the special master and, ultimately, the circuit court, determined that ten of the requested documents are exempt entirely from disclosure under *W. Va.Code*, 29B–1–4(8) [1977], which exempts "[i]nternal memoranda or letters received or prepared by any public body." The circuit court further determined that portions of seven other requested documents are likewise exempt from public disclosure under *W. Va.Code*, 29B–1–4(8) [1977]. The exempt portions of these documents were deleted and the remaining portions thereof were ordered released to the Gazette. *See The Ogden Newspapers, Inc. v. City of Williamstown*, 192 W.Va. 648, 453 S.E.2d 631 (1994). The primary issue in this case is whether the circuit court properly applied *W.Va.Code*, 29B–1–4(8) [1977] to the documents at issue.

## III.

### A.

The purpose of WVFOIA is enunciated in *W. Va.Code*, 29B–1–1 [1977], "Declaration of policy":

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the state of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.

*See 4–H Road Comm. Ass'n v. W.Va.U. Found., Inc.*, 182 W.Va. 434, 388 S.E.2d 308 (1989). *See also AT & T Communications of W.Va., Inc. v. Public Service Com'n*, 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) ("The general policy of th[e] act is to allow as many public records as possible to be made available to the public." (footnote omitted)).

To achieve the above-stated purpose of WVFOIA, *W. Va.Code*, 29B–1–1 [1977], "[e]very person has a right to inspect or copy any public record [11] of a public body [12] in this state except as otherwise expressly provided by ... [*W. Va.Code*, 29B–1–4][.]" *W. Va. Code*, 29B–1–3(1) [1992] (footnotes added). *W.Va.Code*, 29B–1–4 [1977] sets forth eight specific exemptions to WVFOIA's general disclosure provisions.

■ This Court has made clear that the eight exemptions described in *W. Va.Code*,

---

Document # 48: Letter from Charles Lorenson to C. Kenneth Goddard.

Document # 51: Letter from C. Kenneth Goddard to Charles Lorenson.

Document # 63: Fax cover page from Mark Muchow (Development Office employee) to C. Kenneth Goddard enclosing letter to Goddard from Charles Lorenson regarding tax issues.

Document # 107: Fax cover page sending Document number 106 to C. Kenneth Goddard.

Document # 117: Fax cover page from Rolland Phillips to C. Kenneth Goddard.

11. *W. Va.Code*, 29B–1–2(4) [1977] defines "public record" as "includ[ing] any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body."

The Development Office does not deny that the requested documents are "public records."

12. "Public body" is defined in *W. Va.Code*, 29B–1–2(3) [1977] as "every state officer, agency, department, including the executive, legislative and judicial departments, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council or agency thereof, and any other body which is created by state or local authority or which is primarily funded by the state or local authority."

There is no contention that the Development Office is not a "public body" as defined in this code section.

29B–1–4 [1977] [13] are to be strictly construed, while WVFOIA's disclosure provisions are to be liberally construed:

"The disclosure provision of this State's Freedom of Information Act, *W.Va.Code*, 29B–1–1 *et seq.*, as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. *W.Va.Code*, 29B–1–1.' Syl. Pt. 4, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985).

Syl. pt. 5, *Queen v. West Virginia University Hospitals*, 179 W.Va. 95, 365 S.E.2d 375 (1987). Moreover, the burden of proof falls on the public body asserting the exemption to demonstrate that the public record should be protected from disclosure: "[t]he party claiming exemption from the general disclosure requirement under West Virginia Code § 29B–1–4 has the burden of showing the express applicability of such exemption to the material requested." Syl. pt. 7, *Queen, supra. See W. Va.Code*, 29B–1–5(2) [1977].

The exemption provision at issue in this case, *W. Va.Code*, 29B–1–4(8) [1977], or Exemption 8, provides:

**13.** *W. Va.Code*, 29B–1–4 [1977], "Exemptions," provides:

The following categories of information are specifically exempt from disclosure under the provisions of this article:
(1) Trade secrets, as used in this section, which may include, but are not limited to, any formula, plan pattern, process, tool, mechanism, compound, procedure, production data, or compilation of information which is not patented which is known only to certain individuals within a commercial concern who are using it to fabricate, produce or compound an article or trade or a service or to locate minerals or other substances, having commercial value, and which gives its users an opportunity to obtain business advantage over competitors;
(2) Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance: Provided, That nothing in this article shall be construed as precluding an individual from inspecting or copying his own personal, medical or similar file;
(3) Test questions, scoring keys and other examination data used to administer a licensing examination, examination for employment or academic examination;
(4) Records of law-enforcement agencies that deal with the detection and investigation

The following categories of information are specifically exempt from disclosure under the provisions of this article:

. . . .

(8) Internal ·memoranda or letters received or prepared by any public body.

The Development Office maintains that Exemption 8 protects from disclosure a public body's internal memoranda, as well as letters written *by a public body to a private entity or person* and letters written *by a private entity or person to a public body.*

This Court has never directly addressed the application or interpretation of Exemption 8.[14] However, other courts have interpreted Exemption 8's federal counterpart, 5 U.S.C. § 552(b)(5) [1994], which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" Significantly, courts have expressly interpreted 5 U.S.C. § 552(b)(5) [1994] in light of the federal Freedom of Information Act's clear

of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement;
(5) Information specifically exempted from disclosure by statute;
(6) Records, archives, documents or manuscripts describing the location of undeveloped historic, prehistoric, archaeological, paleontological and battlefield sites or constituting gifts to any public body upon which the donor has attached restrictions on usage or the handling of which could irreparably damage such record, archive, document or manuscript;
(7) Information contained in or related to examination, operating or condition reports prepared by, or on behalf of, or for the use of any agency responsible for the regulation or supervision of financial institutions, except those reports which are by law required to be published in newspapers; and
(8) Internal memoranda or letters received or prepared by any public body.

**14.** In *Veltri v. Charleston Urban Renewal Authority*, 178 W.Va. 669, 363 S.E.2d 746 (1987), a per curiam opinion, we applied the principle that disclosure provisions under WVFOIA are to be liberally construed while exemption provisions are to be strictly construed and held that a tape recording of a public meeting did not constitute an "internal memoranda" under *W. Va.Code*, 29B–1–4(8) [1977].

legislative intent of "maintain[ing] an open government and [of] ensur[ing] the existence of an informed citizenry 'to check against corruption and to hold the governors accountable to the governed[,]' " *Ethyl Corp. v. U.S. Environmental Protection Agency*, 25 F.3d 1241, 1245 (4th Cir.1994) (*quoting N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978)), and of "assur[ing] public access to all governmental records whose disclosure would not significantly harm specific governmental interests." *Soucie v. David*, 448 F.2d 1067, 1080 (D.C.Cir.1971). *See also Sattler v. Holliday*, 173 W.Va. 471, 318 S.E.2d 50 (1984).

■ Recognizing the close relationship between the federal and West Virginia FOIA, we note, in particular, the value of federal precedents in construing our state FOIA's parallel provisions. *See* Burt A. Braverman & Wesley R. Heppler, *A Practical Review of State Open Records Laws*, 49 Geo. Wash. L.Rev. 720, 727 (1981). *See also Sattler*, 173 W.Va. at 473, 318 S.E.2d at 51 ("The exemptions in our statute are similar to those in the federal [FOIA], 5 U.S.C. § 552, and other state acts."). Thus, federal precedent and legislative history of federal Exemption 5 are pertinent to our interpretation of Exemption 8 of WVFOIA. *See* Braverman & Heppler, *supra*.

### B.

As indicated above, Exemption 5 of the federal FOIA exempts from public disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5) (1994). In adopting Exemption 5, it was

Congress' intention that the public "not be entitled to government documents which a private party could not discover in litigation with the agency." *Schell v. U.S. Dept. of Health & Human Services*, 843 F.2d 933, 939 (6th Cir.1988) (citations omitted). The federal FOIA's open government policies notwithstanding, Exemption 5 preserves to government agencies "such recognized evidentiary privileges as the attorney-client privilege, the attorney work-product privilege, and the executive 'deliberative process' privilege."[15] *Schell*, 843 F.2d at 939 (*citing Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th cir. 1980)). *See Arthur Andersen & Co. v. I.R.S.*, 679 F.2d 254, 257 (D.C.Cir.1982). It is the deliberative process privilege which is at issue in this case.[16]

### C.

It has been widely recognized that the primary purpose of the deliberative process privilege is to encourage the free exchange of ideas and information within government agencies, particularly between subordinates and superiors, during the processes of deliberation and policymaking. *Soucie, supra; Schell*, 843 F.2d at 939; *Julian v. U.S. Dept. of Justice*, 806 F.2d 1411, 1419 (9th Cir.1986), *aff'd*, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988); *Manna v. U.S. Dept. Of Justice*, 815 F.Supp. 798, 814 (D.N.J.1993), *aff'd*, 51 F.3d 1158 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995). *See W. Va.Code*, 29B–1–1 [1977], *supra; Doe v. Alaska Superior Ct.*, 721 P.2d 617, 624 (Alaska 1986).

In *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d

**15.** In *Mead Data Cent.*, 566 F.2d at 252, the United States Court of Appeals, District of Columbia Circuit cautioned that "[a]lthough Congress clearly intended to refer the courts to discovery principles for the resolution of exemption five disputes, the situations are not identical, and the Supreme Court has recognized that discovery rules should be applied to FOIA cases 'only by way of rough analogies.' " (*quoting Environmental Protection Agency v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119, 131 (1973)). (footnotes omitted).

**16.** In *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980), that court pointed out that the executive deliberative process privilege, also referred to as the "executive privilege," *Fine v. U.S. Dept. Of Energy*, 830 F.Supp. 570, 574 (D.N.M.1993), is "unique to the government." *See Arthur Andersen*, 679 F.2d at 257. Moreover, the deliberative process privilege "is a tripartite privilege because it exists for the legislative and judicial branches of government as well as for the executive." *Guy v. Judicial Nominating Com'n*, 659 A.2d 777, 782 (Del. Ct.App.1995). (citation omitted).

29, 47 (1975), the United States Supreme Court observed that

> [t]he cases uniformly rest the [deliberative process] privilege on the policy of protecting the 'decision making processes of government agencies,' ... and focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' ... The point, plainly made in [S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)], is that the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and that the 'decisions' and 'policies formulated' would be the poorer as a result.

(citations omitted). *See Schell*, 843 F.2d at 939; *Coastal States*, 617 F.2d at 866.

The deliberative process privilege has been applied to exempt from disclosure written internal government communications, such as opinions and recommendations, which reflect an agency's deliberative or decision-making processes. *Soucie*, 448 F.2d at 1077; *Mead Data Cent.*, 566 F.2d at 256; *Vaughn v. Rosen*, 523 F.2d 1136 (D.C.Cir.1975). *See Arthur Andersen*, 679 F.2d at 257 (The deliberative process privilege covers "'"all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be."'" (citations omitted)); *Doe*, 721 P.2d at 624 (The deliberative process privilege clearly protects "'advisory communications, *from a subordinate to a government officer*'" as well as "'deliberative communications *between officials and those who assist them* in formulating ... governmental action.'" (citation omitted and emphasis provided)).

Because the deliberative process privilege is "'concerned with protecting the process by which [government] policy is formulated[,]'" material which cannot "'reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating

judgment'" is not exempt from disclosure as deliberative process. *Ethyl Corp.*, 25 F.3d at 1248–49 (citation omitted). Moreover, documents explaining an agency's final decision, that is, *post* decisional materials, are likewise not exempt from disclosure under the deliberative process privilege, as there is no deliberation to be stifled. Russell L. Weaver and James T.R. Jones, *The Deliberative Process Privilege*, 54 Mo. L.Rev. 279, 291 (1989) (*citing Schlefer v. United States*, 702 F.2d 233 (D.C.Cir.1983); *Jordan v. U.S. Dept. of Justice*, 591 F.2d 753 (D.C.Cir.1978)) (footnotes omitted).

In addition, the federal FOIA's Exemption 5 expressly protects from disclosure *intra*-agency memorandum, in addition to *inter*-agency memorandum, thereby permitting one governmental agency to obtain written advice or recommendations from a separate governmental agency without subjecting such advice or recommendations to public scrutiny. *See Renegotiation Board v. Grumman Aircraft Eng. Corp.*, 421 U.S. 168, 188, 95 S.Ct. 1491, 1502, 44 L.Ed.2d 57, 73 (1975); *Mobil Oil Corp. v. Fed. Trade Com'n*, 406 F.Supp. 305, 315 (S.D.N.Y.1976).

Finally, in the spirit of further promoting frank and open discussions during an agency's deliberative process, courts have interpreted the deliberative process privilege to include opinions and recommendations to a governmental agency by outside consultants and experts so long as such opinions or recommendations are obtained during the government agency's deliberative, predecisional process. *See Wu v. National Endowment for Humanities*, 460 F.2d 1030, 1032 (5th Cir.1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973); *Soucie*, 448 F.2d at 1078 n. 44 ("The government may have a special need for the opinions and recommendations of temporary consultants and those individuals should be able to give their judgments freely without fear of publicity.").[17] *See also Brush Wellman, Inc. v.*

---

**17.** At least one author suggests, however, that every "subjective recommendatory communication by an outside 'consultant' to an agency" is not necessarily entitled to be withheld from public view under federal Exemption 5:

> [I]t might be argued that neither *interested* nor *prejudiced* outside parties recommending particular agency action should be covered by the exemption. The logic of such a limitation is most easily illustrated with regard to interested parties, those with a direct, personal stake in a

*Dept. of Labor,* 500 F.Supp. 519, 522 (N.D.Ohio 1980); *Dow Jones & Co. v. Dept. of Justice,* 917 F.2d 571, 574–75 (D.C.Cir. 1990).

■ The deliberative process privilege may be applied then to government documents which reflect that agency's group-thinking during its deliberative or decision-making process; to one agency's advice or recommendations to a separate government agency during the latter's deliberative or decision-making process; and to outside consultants or experts whose opinions or recommendations are sought by a government · agency in the course of its policymaking process. In any case, the government document at issue must be both predecisional and deliberative in character. *Schell,* 843 F.2d at 940; *Mapother v. Dept. of Justice,* 3 F.3d 1533, 1537 (D.C.Cir.1993); *Manna,* 815 F.Supp. at 815. *See* Weaver and Jones, *supra.* However, it is generally accepted that the deliberative process privilege does not extend to materials which are factual in nature, even if such material may have been used by government decision makers in their deliberations. *See Ogden Newspapers, supra; EPA v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119, 132 (1973); *Mead Data Cent.,* 566 F.2d at 256. Thus, to the extent that segregable, factual data may be extracted, that information should be disclosed. *Mead Data Cent.,* 566 F.2d at 256; *Soucie,* 448 F.2d at 1077–78. *See Ogden Newspapers, supra.*

## IV.

■ As indicated above, like the federal FOIA,[18] WVFOIA imposes upon the government agency "the burden of showing the express applicability of [the claimed] exemption to the material requested." Syl. pt. 7, in

part, *Queen, supra. See W. Va.Code,* 29B–1–5(2) [1977]. Conclusory or general assertions on the part of the government agency do not satisfy this burden. *Queen,* 179 W.Va. at 103, 365 S.E.2d at 383. *See Mead Data Cent.* 566 F.2d at 251, 258. Instead, the agency must specifically assert the deliberative process privilege for every document it seeks to protect, *Mead Data Cent.,* 566 F.2d at 251; *Arthur Andersen,* 679 F.2d at 258; *Mobil Oil Corp. v. Dept. of Energy,* 102 F.R.D. 1, 6, 8–9 (N.D.N.Y.1983), without providing information so detailed that it compromises the privilege claimed. *See Church of Scientology v. U.S. Dept. of the Army,* 611 F.2d 738, 742 (9th Cir.1979). *See also* n. 2, *supra.* The agency must establish

> 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.' *Coastal States, supra,* 617 F.2d at 868. To establish that documents do not constitute the 'working law' of the agency, the agency must present to the court the 'function and significance of the document[s] in the agency's decisionmaking process,' *·Taxation With Representation Fund [v. I.R.S.,* 646 F.2d 666, 678 (D.C.Cir.1981) ], 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s],' *id.* at 679, and the positions in the chain of command of the parties to the documents. *Id.* at 681.

*Arthur Andersen,* 679 F.2d at 258.

Though a court may, in the first instance, examine disputed documents *in camera, see W. Va.Code,* 29B–1–5(2) [1977] ("[t]he court, on its own motion, may view the documents in controversy in camera before reaching a decision." *Id.* in relevant part), many courts require that an agency set forth its specific claims of deliberative process privilege in a

given agency decision. The considerations underlying the exemption simply do not apply with regard to such parties: their very personal stake in the outcome provides an incentive for a full exposition of their views ample to overcome any inhibiting effects of disclosure. Moreover, confidentiality between special interest groups and Government should not be encouraged. Indeed, recommendations submitted by interested parties should be disclosed in order to help the public examine the impact that interest groups have on agency

policy and to expose to public scrutiny the highly biased viewpoint that such communications are likely to contain. *Communications from interested outsiders simply should not be considered intra-agency memoranda.*
(Emphasis provided and emphasis added). Note, *The Freedom of Information Act and the Exemption for Intra–Agency Memoranda,* 86 Harv.L.Rev. 1047, 1064 (1972–73).

**18.** *See* 5 U.S.C. § 552(a)(4)(B) (1994).

574

*Vaughn* index, *see* n. 2, *supra,* "to allow the courts to determine the validity of the Government's claims without physically examining each document." *Coastal States,* 617 F.2d at 861. *See Arthur Andersen,* 679 F.2d at 258.[19] This requirement places the burden of justification properly on the agency and not on the court. *See Id.*

Many courts require a government agency invoking the deliberative process privilege to submit, in addition to a *Vaughn* index, an affidavit, indicating why disclosure of the requested documents would be harmful and why such documents should be exempt. *See Guy v. Judicial Nominating Com'n,* 659 A.2d 777, 781 (Del.Ct.App.1995).

■ We find that requiring a public body to produce a *Vaughn* index, as described in n. 2, *supra,* when it claims that certain documents in its possession are exempt from disclosure under the deliberative process privilege to be well-advised. We therefore hold that when a public body asserts that certain documents in its possession are exempt from disclosure under *W. Va.Code,* 29B–1–4(8) [1977], on the ground that those documents are "internal memoranda or letters received or prepared by any public body," the public body must produce a *Vaughn* index named for *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically identifying the reasons why *W. Va.Code,* 29B–1–4(8) [1977] is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. The *Vaughn* index need not be so detailed that it compromises the privilege claimed. The public body must also submit an affidavit, indicating why disclosure of the documents would be harmful and why such documents should be exempt.[20]

**V.**

Though we recognize that the deliberative process privilege language of federal Exemption 5 differs from that of WVFOIA Exemption 8, we nevertheless interpret the latter to be consistent with the former. WVFOIA, like its federal counterpart, was enacted to fully and completely inform the public "regarding the affairs of government and the official acts of those who represent them as public officials and employees." *W. Va.Code,* 29B–1–1 [1977], in part. To carry out its policy of keeping the public informed, WVFOIA's disclosure provisions are to be liberally construed while its exemption provisions are to be strictly construed. Syl. pt. 5, *Queen, supra. See W. Va.Code,* 29B–1–1 [1977].

■ As noted above, the Development Office's proffered construction of Exemption 8 is that it encompasses not only a public body's internal memoranda, but also all letters written *by a public body to a private entity or person,* as well as all letters written *by a private entity or person to a public body.* We find this interpretation of Exemption 8 to be far too broad and to be contrary to the purposes of both WVFOIA and Exemption 8, which, like federal Exemption 5, was enacted to protect the decision-making processes of *government agencies. See NLRB v. Sears Roebuck, supra.* Information about the "deliberative" or negotiating process outside of a government body, *between itself and an outside party,* are *not* part of the deliberative process *within a government body* and "neither of the policy objectives which [the deliberative process privilege] is designed to serve—avoiding premature disclosure of agency decisions and encouraging the free exchange of ideas among administrative personnel—is relevant to a claim of secrecy for a proceeding between a [government body] and an outside

**19.** Clearly, production of the *Vaughn* index is equally as important to the party seeking the withheld documents. Without the *Vaughn* index, the party making a freedom of information request is at a distinct disadvantage in that "only the public body holding the information can speak confidently regarding the nature of the material and the circumstances of its preparation

and use which might support an exemption defense." *Guy,* 659 A.2d at 781. *See Vaughn,* 484 F.2d at 825–26.

**20.** As previously noted, the circuit court, in this case, ordered the Development Office to produce both a *Vaughn* index and an affidavit.

party." *Mead Data Cent.*, 566 F.2d at 257–58. Rather, whatever "secret" information has been exchanged between the government agency and the outside party "has already been fully disclosed to at least one party outside the [government body]—[the outside party] itself—and the [government body] has no control over further disclosure." *Id. See Doe*, 721 P.2d at 625 ("When citizen letter-writers 'go public' by writing to a government official concerning a public issue, they lose their expectation of confidentiality, as do the government officials who write in response.")

Accordingly, we hold that *W. Va.Code*, 29B–1–4(8) [1977], which exempts from disclosure "internal memoranda or letters received or prepared by any public body" specifically exempts from disclosure only those written internal government communications consisting of advice, opinions and recommendations which reflect a public body's deliberative, decision-making process; written advice, opinions and recommendations from one public body to another; and written advice, opinions and recommendations to a public body from outside consultants or experts obtained during the public body's deliberative, decision-making process. *W. Va.Code*, 29B–1–4(8) [1977] does not exempt from disclosure written communications between a public body and private persons or entities where such communications do not consist of advice, opinions or recommendations to the public body from outside consultants or experts obtained during the public body's deliberative, decision-making process.

As we have already indicated, the documents actually withheld under Exemption 8, either in whole or in part, are not part of the record in this case and therefore are not available for our review. *See* n. 3 *supra.* According to the Gazette's Exhibit A, however, it appears that the disputed documents were exchanged either between Development Office employees and Apple Grove employees or between Apple Grove employees and employees of other public bodies. *See* n. 10 *supra.* At least one document was exchanged between then Governor Moore and Parsons & Whittemore President George Landegger. *See Id.* The special master re-

viewed the *Vaughn* index and July 24, 1995 affidavit of Rolland Phillips, a Development Office employee, and determined that the documents listed in the Gazette's Exhibit A should be withheld, either in whole or in part, pursuant to Exemption 8. Unless these documents consisted of advice, opinions or recommendations reflecting a public body's deliberative, decision-making process, they should not have been withheld from disclosure, either in whole or in part, under Exemption 8. We therefore remand this case to the circuit court to review the disputed documents and, if necessary, to conduct further proceedings, consistent with this opinion.

Remanded with directions.

RECHT, J., sitting by temporary assignment.