IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

No. 14-0370

**FILED**
**May 21, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HIGHLAND MINING COMPANY,
Plaintiff Below, Petitioner

v.

WEST VIRGINIA UNIVERSITY
SCHOOL OF MEDICINE,
Defendant Below, Respondent

Appeal from the Circuit Court of Monongalia County
The Honorable Phillip D. Gaujot, Judge
Civil Action No. 12-C-275

AFFIRMED, IN PART; REVERSED, IN PART;
AND REMANDED

Submitted: March 4, 2015
Filed: May 21, 2015

Christopher B. Power, Esq.
Robert M. Stonestreet, Esq.
Babst, Calland, Clements and Zomnir, PC
Charleston, West Virginia
Attorneys for Petitioner

Carte P. Goodwin, Esq.
Johnny M. Knisely II, Esq.
Benjamin B. Ware, Esq.
Elise N. McQuain, Esq.
Goodwin & Goodwin, LLP
Charleston, West Virginia
Attorneys for Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.
SENIOR STATUS JUSTICE MCHUGH sitting by temporary assignment.
JUSTICE KETCHUM concurs in part, dissents in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.     "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2.     "'"The disclosure provision of this State's Freedom of Information Act, *W.Va. Code,* 29B-1-1 *et seq.,* as amended, [is] to be liberally construed, and the exemptions to such Act are to be strictly construed. *W.Va. Code,* 29B-1-1." Syl. Pt. 4, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985).' Syl. pt. 5, *Queen v. West Virginia University Hospitals,* 179 W.Va. 95, 365 S.E.2d 375 (1987)." Syl. Pt. 1, *Daily Gazette Co. v. W.Va. Dev. Office*, 198 W.Va. 563, 482 S.E.2d 180 (1996).

3.     "*W.Va. Code,* [§ 29B-1-4(a)(8)], which exempts from disclosure 'internal memoranda or letters received or prepared by any public body' specifically exempts from disclosure only those written internal government communications consisting of advice, opinions and recommendations which reflect a public body's deliberative, decision-making process; written advice, opinions and recommendations from one public body to another; and written advice, opinions and recommendations to a public body from outside consultants or experts obtained during the public body's deliberative, decision-making process. *W.Va. Code,* [§ 29B-1-4(a)(8)] does not exempt from disclosure written communications between a public body and private persons or entities where such communications do not consist of advice, opinions or recommendations to the public body from outside consultants or experts obtained during

the public body's deliberative, decision-making process." Syl. Pt. 4, *Daily Gazette Co. v. W.Va. Dev. Office*, 198 W.Va. 563, 482 S.E.2d 180 (1996).

4.      West Virginia's Freedom of Information Act, West Virginia Code § 29B-1-4(a)(8) (2012), exempts from disclosure "internal memoranda or letters received or prepared by any public body" as defined by West Virginia Code § 29B-1-2(3) (2012).

5.      To invoke the "internal memoranda" exemption set forth in West Virginia Code § 29B-1-4(a)(8) (2012) successfully, the public body must show that in the context in which the materials are prepared or considered, the documents are both predecisional and deliberative to its decision-making process. Predecisional documents are prepared in order to assist a public body decisionmaker in arriving at his or her decision. Deliberative material reflects the give-and-take of the consultative process, by revealing the manner in which the public body evaluates possible alternatives relevant to the decisional process.

6.      "The primary purpose of the invasion of privacy exemption to the Freedom of Information Act, *W.Va.Code,* [§ 29B-1-4(a)(2)], is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Syl. Pt. 6, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985).

7.    The West Virginia Freedom of Information Act does not provide an "academic freedom" exemption to its general disclosure provision, West Virginia Code § 29B-1-3 (2012).

8.    "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div. v. Pub. Serv. Comm'n,* 182 W.Va. 152, 386 S.E.2d 650 (1989).

9.    "In response to a proper Freedom of Information Act request, a public body has a duty to redact or segregate exempt from non-exempt information contained within the public record(s) responsive to the FOIA request and to disclose the nonexempt information unless such segregation or redaction would impose upon the public body an unreasonably high burden or expense. If the public body refuses to provide redacted or segregated copies because the process of redacting or segregating would impose an unreasonably high burden or expense, the public body must provide the requesting party a written response that is sufficiently detailed to justify refusal to honor the FOIA request on these grounds. Such written response, however, need not be so detailed that the justification would compromise the secret nature of the exempt information." Syl. Pt. 5, *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004).

10.    "Pursuant to West Virginia Code § 29B-1-3(5) (2012), a public body is vested with the authority and discretion to impose a search or retrieval fee in

iii

connection with a Freedom of Information Act request to provide public records provided that such fee is reasonable." Syl. Pt. 2, *King v. Nease*, 233 W.Va. 252, 757 S.E.2d 782 (2014).

11.     "For a person to have brought a suit for the disclosure of public records under the West Virginia Freedom of Information Act (FOIA), as permitted by W.Va. Code § 29B-1-5 (1977) (Repl.Vol.1998), so as to entitle him/her to an award of attorney's fees for "successfully" bringing such suit pursuant to W.Va. Code § 29B-1-7 (1992) (Repl.Vol.1998), he/she need not have prevailed on every argument he/she advanced during the FOIA proceedings or have received the full and complete disclosure of every public record he/she wished to inspect or examine. An award of attorney's fees is proper even when some of the requested records are ordered to be disclosed while others are found to be exempt from disclosure or are released in redacted form. In the final analysis, a successful FOIA action, such as would warrant an award of attorney's fees as authorized by W.Va. Code § 29B-1-7, is one which has contributed to the defendant's disclosure, whether voluntary or by order of court, of the public records originally denied the plaintiff." Syl. Pt. 7, *Daily Gazette Co. v. W.Va. Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999).

**Workman, Chief Justice:**

Petitioner Highland Mining Company ("Highland") filed this civil action under the West Virginia Freedom of Information Act ("FOIA"), West Virginia Code §§ 29B-1-1 to -7 (2012), seeking disclosure of public records from Respondent West Virginia University School of Medicine ("WVU"). The FOIA requests focused on documents related to several articles co-authored by WVU Associate Professor Michael Hendryx, Ph.D., suggesting that environmental impacts of surface coal mining play a role in the health problems of the area's residents. The parties litigated this matter for two years in the Circuit Court of Monongalia County; WVU released certain documents to Highland but withheld certain other documents, either in whole or in part, claiming they were statutorily exempt. Finally, the circuit court granted summary judgment in favor of WVU, and dismissed this action.

On appeal to this Court, Highland raises several assignments of error and argues the circuit court's order should be reversed because it is based upon an unprecedented expansion of the FOIA exemptions. Upon review, we affirm, in part; reverse, in part; and remand the case for further proceedings. For the reasons discussed below, this Court finds: (1) WVU may invoke the FOIA's "internal memoranda" exemption set forth in West Virginia Code § 29B-1-4(a)(8) to withhold documents that reflect Professor Hendryx's deliberative process; (2) WVU may not claim an "academic freedom" privilege to avoid the plain language of the FOIA; (3) the FOIA's "personal

1

privacy" exemption set forth in West Virginia Code § 29B-1-4(a)(2) is not applicable to documents containing anonymous peer review comments of the draft articles but those documents are still exempt from disclosure under the FOIA's "internal memoranda" exemption; (4) Highland should have been afforded the opportunity to modify its FOIA requests before the circuit court dismissed the action; and (5) the circuit court must issue a ruling on Highland's request for attorney fees and costs. Accordingly, we remand this matter for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Highland submitted extensive FOIA requests to WVU on February 1, 2012. Highland requested documents related to eight articles co-authored by Professor Hendryx, Director of the West Virginia Rural Health Research Center, with WVU's School of Medicine's Department of Community Medicine. In those articles, Professor Hendryx suggested there was a connection between surface coal mining and birth defects, cancer, and poor quality of life in the region.[1] Highland requested essentially all

---

[1] One of these articles sets forth the following conclusions:

> Results indicate that previously documented HRQOL [Health Related Quality of Life] disparities in Appalachia's coal mining areas are concentrated in MTM [Mountaintop Mining] zones in the central part of the region. These disparities partly reflect the chronic socioeconomic weaknesses inherent in coal-dependent economies and highlight the need for efforts at economic diversification in these areas. However, significant disparities persist after control for these risks and suggest that the environmental

(continued . . .)

documents related to the initiation, preparation and publication of Professor Hendryx's articles. [2]

---

impacts of MTM may also play a role in the health problems of the area's population. In April 2010, the EPA [Environmental Protection Agency] issued new guidance regulating MTM that recognized the environmental and community health costs imposed by this practice: the guidance was intended to make new MTM permits much more difficult to obtain. Several weeks after this ruling, the first MTM permit application to come before the EPA was nevertheless approved, leading to concerns from environmental communities that the rules would not be interpreted or enforced as intended. Our results contribute to the evidence base in support of the April EPA decision.

Zullig, K.J. and Hendryx, M., et al., *Health-Related Quality of Life Among Central Appalachian Residents in Mountaintop Mining Counties*, 101, No. 5 Am. J. Pub. Health 848, 852 (May 2011) (footnotes omitted).

[2] Highland submitted two FOIA requests on the same day. In one FOIA request (referred to by the parties as the "subpoena-based FOIA request"), Highland requested the release of the same information that had been the subject of three subpoenas previously served on WVU by Highland in December of 2011. Articles co-authored by Professor Hendryx were used to challenge Highland's proposal to expand its Reylas surface coal mine in Logan County, West Virginia, in a civil action filed in the United States District Court for the Southern District of West Virginia. *Ohio Valley Environ. Coal., Inc., et al. v. U.S. Army Corps. of Eng's*, Civil Action No. 3:11-cv-0149 (S.D. W.Va. 2011). The plaintiffs in that litigation sought to add a new claim to their complaint based upon adverse health effects associated with surface coal mining. Highland served three subpoenas on non-party WVU seeking information regarding the three articles cited by the plaintiffs in that lawsuit. After the district court denied the plaintiffs' motion to add health-based claims to their complaint, Highland withdrew the subpoena request in January of 2012. However, Highland advised WVU that it would file a FOIA request seeking the same information.

In the subpoena-based FOIA request, Highland requested all documents related to the initiation, preparation and publication of those articles; it requested the curriculum vitae of the study authors, the data used in the statistical analysis presented in the subject (continued . . .)

By e-mails dated March 2, 2012, WVU refused to release any documents responsive to the FOIA requests. WVU asserted the documents were exempt from disclosure under the following FOIA exemptions: (1) information of a personal nature, West Virginia Code § 29B-1-4(a)(2); (2) information specifically exempt from disclosure by statute, West Virginia Code § 29B-1-4(a)(5); (3) internal memoranda, West Virginia Code § 29B-1-4(a)(8); and (4) trade secrets, West Virginia Code § 29B-1-4(a)(1).

On April 12, 2012, Highland instituted this action against WVU, seeking disclosure of the documents it requested pursuant to the FOIA. WVU filed a motion to dismiss on August 3, 2012, claiming the FOIA requests were overly broad and unduly burdensome; Highland filed a motion for summary judgment on September 11, 2012. Following a hearing on these motions, the circuit court rejected WVU's claim of undue burden. The circuit court stated WVU was "stonewalling" Highland by refusing to provide any responsive documents. By order entered November 7, 2012, the circuit court denied WVU's motion to dismiss and deferred a ruling on Highland's motion for

articles, including data discussed but not shown, documents and communications related to the selection or rejection of particular mining areas to be examined in the studies, communications with members of specifically-identified third-party organizations in the course of preparing the articles, and documents related to the door-to-door health interviews conducted pursuant to the Self-Reported Cancer Study, including sample interview forms and the completed forms.

In its other FOIA request (referred to by the parties as the "communications FOIA request"), Highland requested letters, e-mails and other communications sent to or from Professor Hendryx pertaining to five other articles that he co-authored. In addition, the communications FOIA request sought peer review comments on drafts of Professor Hendryx's articles.

4

summary judgment. The circuit court required that WVU release any responsive information to Highland, and if any responsive documents were withheld from disclosure or redacted, that WVU provide a *Vaughn* index[3] and explanative affidavit.

Thereafter, WVU retained the services of a document management company to electronically manage the production of documents for Highland's FOIA requests. Over the course of this litigation, WVU has made five productions of documents to Highland, producing some 2,364 documents, totaling 11,090 pages. Four of those document productions[4] included a separate *Vaughn* index and corresponding affidavit, explaining WVU's decision to redact 119 documents and withhold 772 documents.

---

[3] *See* Syl. Pt. 6, *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004) ("When a public body asserts that certain documents or portions of documents in its possession are exempt from disclosure under any of the exemptions contained in W.Va. Code, 29B-1-4 (2002 Repl.Vol.) (2003 Supp.), the public body must produce a *Vaughn* index named for *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically identifying the reason(s) why an exemption under W.Va. Code, 29B-1-4 is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. The *Vaughn* index need not be so detailed that it compromises the privilege claimed. The public body must also submit an affidavit, indicating why disclosure of the documents would be harmful and why such documents should be exempt. Syllabus point 3 of *Daily Gazette Co., Inc. v. West Virginia Development Office,* 198 W.Va. 563, 482 S.E.2d 180 (1996), is hereby expressly modified.").

[4] The first *Vaughn* index listed 121 documents WVU withheld on the basis they were not considered "public records" subject to the FOIA; WVU later withdrew that justification for withholding any documents. Under the FOIA, a "'[p]ublic record' includes any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." W.Va. Code § 29B-1-2(4).

5

On April 3, 2013, Highland filed a renewed motion for summary judgment, arguing the *Vaughn* indices that WVU provided were facially insufficient and that most, if not all, of the exemptions cited by WVU were not applicable. Following briefing, the circuit court held a hearing on this motion. On May 30, 2013, the circuit court entered an "Agreed Order Regarding Preparation of Sample *Vaughn* Index." The circuit court required WVU to provide a sample *Vaughn* index with respect to a limited number of withheld documents; this *Vaughn* index was to include a more detailed explanation of each withheld document, specifically, how each cited exemption applied to justify the respective withholding.

On July 17, 2013, WVU provided the sample *Vaughn* index and the affidavit of WVU's associate general counsel. The sample *Vaughn* index listed ninety-three documents that were redacted or withheld from production. According to WVU, some documents were withheld on the basis of the FOIA's "internal memoranda" exemption, some documents were withheld on the basis of "academic freedom" privilege, and some documents were withheld on the basis of the FOIA's "trade secret" exemption.

On November 6, 2013, the circuit court entered an "Agreed Order Regarding Briefing on Outstanding Issues," pursuant to which it required both parties to file renewed motions for summary judgment. Thereafter, the parties filed briefs and identified those documents listed on the sample *Vaughn* index they wanted the circuit court to review in camera.

In Highland's memorandum of law in support of its renewed motion for summary judgment, Highland provided the following factual background regarding its request for documents concerning Professor Hendryx's work:

> At all relevant times, Michael Hendryx, Ph.D., was a professor employed by the defendant West Virginia University School of Medicine ("WVU") who holds degrees in psychology but is not a medical doctor, toxicologist, or epidemiologist. Prof. Hendryx was the Director of the West Virginia Rural Health Research Center, where he and his colleagues received public funds to research rural health issues. In that capacity, Hendryx published taxpayer-funded papers such as those that are the subject of the FOIA Requests, focused on linking coal mining and adverse health impacts. His goal – in his own words – is to convince "politicians" that West Virginia "can have a better economy if we work to create a more diverse economy that does not depend on coal." He further hopes his studies help eliminate mountaintop removal mining and focus policymakers away from coal and towards "cleaner" forms of energy. He thinks that "tighter standards on emissions controls is an important outcome of [his] research." He hopes "to get [his papers] more in the eyes of state policy makers" so that "the Appalachian people and governments could consider whether our reliance on coal mining for the economy is a good idea or not." (footnotes and citations omitted).

Highland requested that the circuit court order WVU to provide all responsive documents listed on the sample *Vaughn* index, arguing they do not fall under any applicable FOIA exemption. Highland also requested that the circuit court order WVU to confer with Highland regarding the retrieval and review of additional responsive materials that have yet to be gathered in response to the FOIA request. Finally, Highland asserted the circuit

court should award it attorney fees and costs in accordance with West Virginia Code § 29B-1-7 because WVU improperly denied Highland access to the public records.

In WVU's memorandum of law in support of its renewed motion for summary judgment, WVU argued:

> The majority of the documents were withheld or redacted because they contain the preliminary deliberations and research of an academic professor. Specifically, these documents include draft research papers and correspondence between co-authors with comments or suggestions regarding the drafts themselves. Like other state employees (perhaps even more so), these faculty members must be permitted the latitude to craft and hone their work in an environment that fosters the free exchange of ideas.

Thus, WVU claimed the documents withheld were exempt from disclosure under the "internal memoranda" exemption of the FOIA, and/or an "academic freedom" privilege.[5] WVU also argued that Highland's FOIA requests were unduly burdensome because WVU identified over 240,000 documents that were potentially responsive to Highland's requests and "[t]o date, WVU [had] reviewed 43,733 documents in a process that . . . spanned the pendency of this case."

---

[5] In this pleading, WVU did not contend the documents were withheld based on the FOIA's "trade secret" exemption. WVU stated that although this exemption had been asserted previously, it no longer believed the circuit court had to specifically address this issue because the same documents covered by the "trade secret" exemption were subject to other exemptions asserted by WVU.

Following an in camera review of the documents,[6] the circuit court entered an order on March 19, 2014, granting summary judgment to WVU and denying Highland's cross-motion. The circuit court held that WVU had properly refused to provide all withheld and redacted documents on the basis of: (1) the FOIA's "internal memoranda" exemption found at West Virginia Code § 29B-1-4(a)(8); (2) an "academic freedom" privilege it incorporated into the FOIA's "personal privacy" exemption found at West Virginia Code § 29B-1-4(a)(2); and/or (3) the FOIA requests were unduly burdensome. The circuit court did not address Highland's motion for attorney fees and costs.

On appeal to this Court, Highland raises eight assignments of error.[7] Highland urges this Court to reverse the order of the circuit court and find that WVU

---

[6] We note the availability and scope of in camera review is within the discretion of the circuit court. Such review offers a check on the accuracy and honesty of the public body's asserted exemptions. In camera review is conducted incident to, rather than as a substitute for, the *Vaughn* index.

[7] Highland contends: (1) the "internal memoranda" exemption under the FOIA does not apply to matters involving scientific research and publication of articles by state university professors; (2) there is no "academic freedom" exemption under the FOIA; (3) the guarantee of a "thorough and efficient system of free schools" under the West Virginia Constitution does not extend to institutions of higher education such as WVU, and cannot serve as the basis for an "academic freedom" exemption under the FOIA; (4) the "personal privacy" exemption under the FOIA cannot be applied when no personal or identifying information is sought or threatened to be released; (5) the circuit court failed to impose the burden of proof on WVU to establish the applicability of the cited FOIA exemptions; (6) WVU either waived its reliance on the "trade secret" exemption under the FOIA or failed to establish it; (7) the circuit court erred in reversing its earlier ruling and finding – nearly two years after this action was filed – that Highland's FOIA requests (continued . . .)

9

must provide the documents requested below. Highland maintains it needs this information in order to evaluate the internal validity of the studies and the conclusions reached in Professor Hendryx's articles. Highland also requests that it be granted its reasonable attorney fees and costs incurred in prosecuting this action, pursuant to West Virginia Code § 29B-1-7.

## II. STANDARD OF REVIEW

"Summary judgment is the preferred method of resolving cases brought under FOIA." *Farley v. Worley*, 215 W.Va. 412, 418, 599 S.E.2d 835, 841 (2004) (quoting *Evans v. Office of Pers. Mgmt.,* 276 F.Supp.2d 34, 37 (D.D.C.2003)). An order granting summary judgment engenders plenary review. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.  DISCUSSION

The FOIA requires the release of public records upon request. *See AT&T Commc'ns of W.Va., Inc. v. Pub. Serv. Comm'n,* 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) ("The general policy of th[e] act is to allow as many public records as possible to be made available to the public." (footnote omitted)).

---

were unduly burdensome; and (8) the circuit court should have awarded Highland attorney fees and costs as a successful FOIA litigant. For the sake of brevity, this Court has consolidated these assignments of error.

10

Pursuant to the FOIA, "[e]very person has a right to inspect or copy any public record of a public body in this State, except as otherwise expressly provided by . . . [W.Va. Code § 29B-1-4][.]" W.Va. Code, § 29B-1-3(1). A FOIA requester is not required to explain why a record should be disclosed or for what purpose a record is being requested.[8] The FOIA sets forth nineteen specific exemptions to its general disclosure provisions. *See id*. § 29B-1-4.

This Court has made clear that the FOIA's exemptions are to be strictly construed, while the FOIA's disclosure provisions are to be liberally construed:

> "'The disclosure provision of this State's Freedom of Information Act, *W.Va. Code,* 29B-1-1 *et seq.,* as amended, [is] to be liberally construed, and the exemptions to such Act are to be strictly construed. *W.Va. Code,* 29B-1-1.' Syl. Pt. 4, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985)." Syl. pt. 5, *Queen v. West Virginia University Hospitals,* 179 W.Va. 95, 365 S.E.2d 375 (1987).

Syl. Pt. 1, *Daily Gazette Co. v. W.Va. Dev. Office*, 198 W.Va. 563, 482 S.E.2d 180 (1996) ("*Daily Gazette I*"). The burden of proof falls on the public body asserting the exemption to demonstrate that the public record should be protected from disclosure: "The party claiming exemption from the general disclosure requirement under West Virginia Code §

---

[8] An exception to this general rule occurs when a request pertains to documents falling under the FOIA's "personal privacy" exemption, West Virginia Code § 29B-1-4(a)(2). As discussed later in this opinion, we have crafted a two-pronged test to establish whether disclosure would result in an unwarranted invasion of privacy. *See Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985).

11

29B-1-4 has the burden of showing the express applicability of such exemption to the material requested."[9] Syl. Pt. 7, *Queen,* 179 W.Va. at 95, 365 S.E.2d at 375.

With this background to guide us, we now address the two FOIA exemptions at issue in this appeal,[10] whether the FOIA requests are unduly burdensome to WVU, and Highland's request for attorney fees and costs.

## A. The FOIA's Internal Memoranda Exemption

The principal statutory provision at issue in this case, West Virginia Code § 29B-1-4(a)(8) provides: "[i]nternal memoranda or letters received or prepared by any public body" are specifically exempt from disclosure under the FOIA. Through the development of case law, this FOIA exemption is commonly referred to as the "deliberative process" exemption and we use the terms interchangeably. The precise question presented here is an issue of first impression for this Court: whether a state

---

[9] We promptly dispose of Highland's assignment of error that the circuit court failed to impose the burden of proof on WVU to establish the applicability of the FOIA exemptions it asserted. The appendix record reveals the circuit court properly held WVU to its burden: WVU produced multiple, detailed *Vaughn* indices (e.g., the index attached to the fourth production of documents was fifty-two pages); filed numerous briefs on the merits of its claimed exemptions; participated in oral arguments; and submitted documents for the circuit court's in camera review.

[10] In Highland's brief to this Court, it argues that WVU either waived its reliance on the "trade secret" exemption under FOIA or failed to establish it. Because WVU does not argue how the "trade secret" exemption may apply to any documents withheld in this case, we agree. *See generally Addair v. Bryant*, 168 W.Va. 306, 316, 284 S.E.2d 374, 382 (1981) (holding this Court may deem as waived any issue not argued in party's appellate brief).

12

university may invoke the "internal memoranda" exemption with respect to documents related to its professor's scientific/academic research. The parties do not cite any precedent interpreting other states' FOIAs directly on point.

We begin our analysis with our leading case on this issue, *Daily Gazette I*. A newspaper made FOIA requests to the West Virginia Development Office seeking information involving the Development Office's deliberations about whether to support a proposed industrial plant in Mason County, West Virginia. In response, the Development Office released certain documents but withheld others on the ground they were "internal memoranda" exempt from disclosure under the FOIA. 198 W.V. at 567, 482 S.E.2d at 566. We set forth the criteria courts must apply when addressing the FOIA's "internal memoranda" exemption in syllabus point four of *Daily Gazette I*:

> *W.Va.Code,* [§ 29B-1-4(a)(8)],[11] which exempts from disclosure "internal memoranda or letters received or prepared by any public body" specifically exempts from disclosure only those written internal government communications consisting of advice, opinions and recommendations which reflect a public body's deliberative, decision-making process; written advice, opinions and recommendations from one public body to another; and written advice, opinions and recommendations to a public body from outside consultants or experts obtained during the public body's deliberative, decision-making process. *W.Va. Code,* [§ 29B-1-4(a)(8)] does not exempt from disclosure written communications between a public body and private persons or entities where such communications do not consist of advice, opinions or recommendations to the public body

---

[11] The syllabus point cites West Virginia Code § 29B-1-4(8) (1977), which contains the same language as West Virginia Code § 29B-1-4(a)(8) (2012).

13

from outside consultants or experts obtained during the public body's deliberative, decision-making process.

198 W.Va. at 575, 482 S.E.2d at 192 (footnote added).

In *Daily Gazette I*, we recognized the relationship between West Virginia's FOIA "internal memoranda" exemption and the federal FOIA counterpart, which exempts from public disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5) (1994). 198 W.Va. at 571, 482 S.E.2d 188. This federal FOIA exemption "preserves to government agencies 'such recognized evidentiary privileges as the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege.' *Schell [v. U.S. Dep't of Justice]*, 843 F.2d [933] at 939 [(6th Cir. 1988)] (citing *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980))." *Daily Gazette I*, 198 W.Va. at 571, 482 S.E.2d at 188. We acknowledged the "deliberative process" privilege wording of the federal FOIA differs from that of West Virginia's FOIA. *Id.* Nevertheless, we found federal precedent useful in construing our FOIA.

In *Daily Gazette I*, we cited a seminal decision from the United States Supreme Court on the "deliberative process" privilege, *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975):

14

> [t]he cases uniformly rest the [deliberative process] privilege on the policy of protecting the "decision making processes of government agencies," . . . and focus on documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." . . . The point, plainly made in [S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)], is that the "frank discussion of legal or policy matters" in writing might be inhibited if the discussion were made public; and that the "decisions" and "policies formulated" would be the poorer as a result.

*Daily Gazette I*, 198 W.Va. at 572, 482 S.E.2d at 189 (quoting *Sears Roebuck*, 421 U.S. at 150).

The "deliberative process" privilege is designed to protect the quality of government decision-making by ensuring that it is not done "in a fishbowl." *EPA v. Mink*, 410 U.S. 73, 87 (1973), *superceded by statute,* Freedom of Information Act, 5 U.S.C. § 552(b)(1) (2002). This FOIA exemption encourages free discussion of alternatives, and "insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, but 'for matters they considered before making up their minds.'" *City of Virginia Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978), *overruled in part on other grounds*, *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981)). "While transparency in government is an important democratic value, our society has often recognized that many important governmental functions operate best removed from the public glare." Michael N.

15

Kennedy, *Escaping the Fishbowl: A Proposal to Fortify the Deliberative Process Privilege*, 99 Nw. U. L. Rev. 1769, 1770 (2005). Nevertheless, because of the FOIA's strong policy favoring disclosure, this exemption should be construed "as narrowly as consistent with efficient Government operation." *Mink,* 410 U.S. at 87 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)).[12] We are mindful that the "deliberative process" FOIA exemption benefits the public and not the officials who assert it. *See Kaiser Aluminum and Chem. Corp. v. U.S.,* 157 F.Supp. 939, 944 (Ct.Cl. 1958).

To invoke the "internal memoranda" exemption successfully, the public body must meet two prerequisites: in "the context in which the materials are used," the documents must be both predecisional and deliberative. *Virginia Beach,* 995 F.2d at 1253 (quoting *Wolfe v. Dep't of Health & Human Servs.,* 839 F.2d 768, 774 (D.C.Cir.1988)). Predecisional documents are "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184 (1975). Deliberative material "reflects the give-and-take of the consultative process," by revealing the manner in which the agency evaluates possible alternative policies or outcomes. *Virginia Beach,* 995 F.2d at 1253 (citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir. 1980)).

---

[12] Evidence of government misconduct, crime, and fraud bars the application of the "deliberative process" exemption. *See In re Sealed Case,* 121 F.3d 729, 738 (D.C.Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." (internal quotation marks omitted)).

WVU argues the FOIA's "internal memoranda" exemption justifies its decision to withhold 760 documents. A research scientist at a public college or university is subject to FOIA because he or she is employed by a public body. Therefore, WVU maintains he or she must be equally and congruently entitled to the protection of this FOIA exemption. For these public body employees, the public function they are hired to perform is the research and publication of scholarly articles. WVU contends the "deliberations" they undertake and the "decisions" the professors make include the final publication of their research efforts. A public university or college's "policy" is to nurture, support, and publish academic research on areas of public concern; its mission is fulfilled when the article is published. Therefore, WVU maintains that if the deliberative processes of its researchers are open for public inspection, WVU will be unable to fulfill its mission.

In opposition, Highland argues this FOIA exemption does not apply because Professor Hendryx was not engaged in policy making on behalf of WVU when preparing the subject articles. In fact, WVU has expressly disclaimed the notion that any research paper published by a WVU professor represents WVU's position or policy.[13] Furthermore, Highland argues the publication of the articles at issue did not involve policy making or a deliberative process within the meaning of this FOIA exemption.

_____

[13] In 2011, WVU released the following position statement: "The findings of any particular research project do not reflect, nor should they, any particular opinion or position of the University itself."

17

Highland relies on a narrow reading of *Ethyl Corp. v. Environmental Protection Agency*, 25 F.3d 1241 (4th Cir. 1994), wherein the Fourth Circuit Court of Appeals held the "deliberative process" exemption only allows for the withholding of documents that "bear on the formulation or exercise of *policy-oriented judgment*." *Id.* at 1248 (emphasis added), s*ee also Coastal States,* 617 F.2d at 866 (declaring federal FOIA "deliberative process" privilege protects "premature disclosure of *proposed policies*") (emphasis added).

Ultimately, Highland maintains WVU can *never* avail itself of the "internal memoranda" FOIA exemption because neither the WVU School of Medicine nor its Rural Health Research Center is a state agency; they do not regulate any activity, promulgate rules or policies that govern any entity's conduct, or engage in any other type of governmental function. Highland acknowledges, however, that Professor Hendryx may have sought to influence the development of policy by federal and state agencies responsible for regulating surface coal mining, but he had no authority to directly develop or impose any such policies.

We agree with Highland's factual assessment that while WVU is a public body, it is not a state agency engaged in policy making. We further agree that Professor Hendryx did not formulate policy on behalf of WVU when he published the research articles. Nevertheless, we emphatically reject Highland's legal argument that WVU may not invoke the "internal memoranda" exemption because that exemption covers only

18

documents reflecting agency policy making communications. There is a bulk of case law applying the federal FOIA's "deliberative process" exemption in the context of administrative agency policy/decision making.[14] At the same time, however, a plethora of federal FOIA cases also extend this exemption to public bodies engaged in activities other than agency policy making. "In its relatively short life, the deliberative process privilege has become one of the most predominate privileges exercised by the government and is now routinely asserted in a wide array of litigation challenging government decisionmaking." Michael Ray Harris, *Standing in the Way of Judicial Review: Assertion of the Deliberative Process Privilege in APA Cases*, 53 St. Louis U. L.J. 349, 350 (2009).

---

[14] The root of this trend may be explained by the fact the federal FOIA represented the culmination of years of congressional effort to amend the public information provisions of the Administrative Procedure Act of 1946.

> The FOIA replaced Section 3 of the Administrative Procedure Act (APA) of 1946, which ostensibly served as a public information provision to permit the public to gain access to federal records. However, the law was filled with loopholes that the government routinely exploited to withhold records. The main obstacle to public access under the APA was a requirement that record requesters demonstrate that the solicited information pertain directly to them. This restriction prevented journalists, writers, historians, lawyers, and others from gaining access to information held by the federal government.

Martin E. Halstuk, *When Is An Invasion of Privacy Unwarranted Under the FOIA? An Analysis of the Supreme Court's "Sufficient Reason" and "Presumption of Legitimacy" Standards*, 16 U.Fla.J.L. & Pub. Pol'y 361, 367 (2005) (footnotes omitted).

Having considered all of these competing arguments, we reject Highland's contention that the "internal memoranda" exemption applies only to administrative agency policy making. A plain reading of our FOIA confirms that WVU has the stronger argument. In West Virginia, administrative agencies are not the only public bodies subject to the FOIA and its accompanying exemptions. West Virginia Code § 29B-1-4(a)(8) exempts from disclosure "internal memoranda or letters received or prepared by *any public body*." *Id.* (emphasis added). And the definition of "public body" under our FOIA is extensive:

> "Public body" means every state officer, agency, department, including the executive, legislative and judicial departments, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council or agency thereof; and any other body which is created by state or local authority or which is primarily funded by the state or local authority.

*Id*. § 29B-1-2(3).[15] The public body entities and their employees set forth above engage in an immensely diverse range of endeavors related to government service. Therefore, we expect their internal deliberations will necessarily address a variety of matters related to their state and/or local governmental responsibilities.

---

[15] The federal FOIA uses the term "agency," not "public body." *See Pub. Citizen Health Research Grp. v. Dep't of Health, Ed. & Welfare*, 668 F.2d 537, 542 (D.C. Cir. 1981) ("For purposes of the Freedom of Information Act the statute provides that 'the term "agency" as defined in section 551(1) . . . includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.' 5 U.S.C. § 552(e) (1976).").

20

Consequently, in *Daily Gazette I*, we did not confine the "internal memoranda" exemption to deliberations preceding agency policy making. Instead, we held a public body may exempt from disclosure documents which reflect its "*deliberative decision-making process.*" 198 W.Va. at 575, 482 S.E.2d at 192 (emphasis added). We explained that courts must evaluate the "function and significance of the documents" to the public body's decision-making process, including an explanation of "the nature of the decision-making authority vested in the office or person issuing the disputed documents[.]" *Id.*[16]

We hereby announce that West Virginia's Freedom of Information Act, West Virginia Code § 29B-1-4(a)(8) (2012), exempts from disclosure "internal memoranda or letters received or prepared by any public body" as defined by West Virginia Code § 29B-1-2(3) (2012). The FOIA reflects our Legislature's recognition that disclosure of public body communications reflecting deliberative processes on any

---

[16] Similarly, other state courts have applied their respective FOIA's "deliberative process" exemption to decisions unrelated to agency policy making. For instance, documents generated by public employees charged with hiring decisions may be exempt from disclosure when they are both predecisional and deliberative. *See Wilson v. Super. Ct.*, 51 Cal. App. 4th 1136, 1143 (Calif. Ct. of App. 2nd Dist. 1997) (applying California state's FOIA, documents held exempt when their sole purpose was to aid Governor in selecting gubernatorial appointees, process which depends upon confidential, candid discussion of candidates' professional competence, political views and private conduct). Other state courts have also applied this FOIA exemption to documents reflecting decision-making activities of judicial branch employees unrelated to agency policy making. *See Commonwealth v. Vartan*, 733 A.2d 1258, 1266 (Pa. 1999) (holding "deliberative process" privilege protected deliberations by members of Pennsylvania Supreme Court regarding decision to build new courthouse).

subject could have a chilling effect on future communications. Confidentiality of certain documents connected with a public body's decision-making process ensures frank and open discussion among its employees, which in turn enhances the quality of their decisions. Considering the strong policy favoring disclosure of public documents, courts must construe this exemption narrowly as consistent with efficient state and local government operations. The key question in every case is whether the disclosure of documents would expose a public body's decision-making process so as to discourage candid discussion and thereby undermine the public body's ability to perform its functions. *See Times Mirror Co. v. Super. Ct.*, 813 P.2d 240, 250 (Cal. 1991) ("In short, the courts' focus . . . is less on the nature of the records sought and more on the effect of the records' release.").

Having determined that WVU, as a public body, may assert the "internal memoranda" exemption, we now turn to the pivotal question of whether the withheld documents fall within this exemption. As discussed above, to invoke the "internal memoranda" exemption set forth in West Virginia Code § 29B-1-4(a)(8) (2012) successfully, the public body must show that in the context in which the materials are prepared or considered, the documents are both predecisional and deliberative to its decision-making process. Predecisional documents are prepared in order to assist a public body decisionmaker in arriving at his or her decision. Deliberative material reflects the give-and-take of the consultative process, by revealing the manner in which the public body evaluates possible alternatives relevant to the decisional process.

22

The relevant public body decision for purposes of applying the "deliberative process" exemption to these public records is not whether WVU adopted a position or policy regarding mountaintop coal removal's health effects on state residents. Rather, when a FOIA requester seeks records surrounding or leading up to an agency publication, the relevant agency decision for purposes of applying the "deliberative process" exemption is the development and ultimate publication of the article. *See United Am. Fin., Inc. v. Potter*, 531 F.Supp.2d 29, 44 (D.D.C. 2008) (finding that relevant agency decision was agency's publication of article where plaintiff's FOIA request sought all supporting documents and drafts of documents relating to article), *accord, Hooker v. U.S. Dep't of Health and Human Servs.*, 887 F.Supp.2d 40, 57 (D.D.C. 2012).

In *Hooker*, a parent of an autistic child filed a federal FOIA action against the Department of Health and Human Services ("HHS") and the Centers for Disease Control ("CDC"), seeking disclosure of information, including all correspondence among researchers, regarding the publication of studies relating to a possible connection between a mercury-based compound used in vaccines and autism. *Id.* at 45. Like Highland sought in the instant case, Mr. Hooker wanted access to this information to refute the conclusions reached in the articles. Mr. Hooker contended the HHS and CDC consistently denied a relationship between the mercury-based compound and autism, "in the face of 'a mounting body of compelling scientific literature' that support[ed] the existence of such a relationship." *Id.* The court rejected Mr. Hooker's arguments and found the HHS and CDC properly applied the federal FOIA "deliberative process"

23

exemption to material that was deliberative in nature when withholding internal communications revealing the analysis underlying the draft manuscripts. *Id.* at 58.

We find the court's analysis in *Hooker* instructive. Thus, we limit our inquiry to whether a requested document, regardless of its nature, (1) was generated before the publication of the research article to which it relates, and if so, (2) whether it reflects Professor Hendryx's deliberative, decision-making or thought process employed to arrive at the article's conclusions and ultimate publication. "[T]he deliberative process exemption protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Virginia Beach,* 995 F.2d at 1253 (quoting *Coastal States*, 617 F.2d at 866). "Draft documents, by their very nature, are typically predecisional and deliberative." *Keeper of the Mountains Found. v. U.S. Dep't of Justice*, 514 F.Supp. 2d 837, 854 (S.D. W.Va. 2007) (citations omitted).

In *Chemical Manufacturers Association v. Consumer Product Safety Commission,* 600 F.Supp. 114 (D.D.C. 1984), the district court addressed this same issue and found documents qualified under the federal FOIA "deliberative process" exemption because they detailed an exchange of ideas among scientists regarding the agency's study of a chemical used in the manufacture of toys. *Id.* at 119. The court ruled these scientific deliberations were part of the agency's "give-and-take" and that disclosure of such deliberations would discourage open discussion among the agency scientists. *Id.*

24

Specifically, the court held that "scientists should be able to withhold nascent thoughts where disclosure would discourage the intellectual risk-taking so essential to technical progress." 600 F.Supp. at 118.

Not only is the parallel to the concerns raised in *Hooker* and *Chemical Manufacturers* evident, but Highland's attempt to invade Professor Hendryx's deliberative process is patent. First, considering the context in which the materials were used, WVU has shown that any document which reveals the analysis underlying Professor Hendryx's articles is predecisional. In the state higher education academic setting, documents generated before the final publication of a scientific research article – all documents related to the initiation, preparation and publication of the articles – are by their very nature predecisional. Second, WVU has shown that any document, regardless of its nature, that exposes the give-and-take of the scientific research consultative process, by revealing the manner in which the researchers evaluate possible alternative outcomes, is deliberative. Because these drafts, data compilations [17] and analyses,

---

[17] Nearly all Professor Hendryx's articles that were the subject of Highland's FOIA requests were based on studies using secondary data only. However, the Self-Reported Cancer Rates Study did involve the use of personal surveys of residents living in areas where mountaintop coal removal took place. We find WVU may withhold documents generated in data compilation because these documents could reveal the deliberative process. *See Hooker,* 887 F.Supp.2d at 58 ("'The choice of what factual material . . . to include or remove during the drafting process is itself often part of the deliberative process, and thus is properly exempt under [the federal FOIA "deliberative process" exemption].'" (quoting *ViroPharma, Inc. v. Dep't of Health and Human Servs.*, 839 F.Supp.2d 184 193 (D.D.C. 2012)); *Montrose Chem. Corp. of Cal. v. Train,* 491 F.2d 63, 67-70 (1974) (holding "deliberative process" privilege applied to summaries (continued . . .)

proposed edits, e-mails and other communications, and peer review comments and responses relate to the planning, preparation and editing necessary to produce a final published article, they are exempt from disclosure. We therefore find that, on the evidence before the circuit court at the summary judgment hearing,[18] WVU successfully carried its burden of proving certain documents fell under the "internal memoranda" umbrella of the FOIA.

Our review of the appendix record, however, reveals that WVU improperly claimed the "deliberative process" exemption to some documents that are post-decisional and/or non-deliberative.[19] As the Supreme Court recognized in *Sears,* the purpose of the

---

containing only factual material because documents revealed author's evaluative judgment as to relative significance of facts and what facts he considered to be important or unimportant); *Washington Research Project, Inc. v. Dep't of Health, Educ. & Welfare*, 504 F.2d 238, 250-251 (D.C. Cir. 1974) ("[T]he judgmental element arises through the necessity to select and emphasize certain facts at the expense of others."); *Farmworkers Legal Servs. v. U.S. Dep't of Labor*, 639 F.Supp. 1368, 1373 (E.D.N.C. 1986) ("Because the list sought here is composed of selective fact, it . . . could reveal the deliberative process.").

[18] This Court reviewed the same evidence. The parties submitted a Joint Appendix that contained five DVDs of the documents provided by WVU in response to Highland's FOIA requests. WVU also submitted to this Court, under seal, the documents it submitted to the circuit court for in camera review.

[19] For instance, Document No. 03-0217 in the sample *Vaughn* index consists of an e-mail dated July 28, 2011, regarding a potential speaking engagement pertaining to the various articles at issue. We find WVU's argument unconvincing that this e-mail should be protected from disclosure because it "reflect[s] these individuals' thought processes and analyses that ultimately resulted in the final decision on how such matters concerning publicity should be handled on behalf of [WVU.]" To accept WVU's argument here, we would be allowing the exception to swallow the rule.

26

deliberative process privilege is to protect the quality of an agency's decision; revealing "communications made after the decision and designed to explain it" do not affect a decision's quality. 421 U.S. at 152.

Our holding today comports with *American Tradition Institute v. Rector and Visitors of the University of Virginia*, 756 S.E.2d 435 (Va. 2014) ("UVA"), where the Virginia Supreme Court was faced with facts analogous to the instant case. In *UVA*, a requester brought suit under Virginia's FOIA against the University of Virginia seeking disclosure of documents produced or received by a former professor while working at the university. *Id.* at 437. The professor was a climate scientist and former professor whose scholarly work had "generated much scientific and political interest." *Id*. Applying a FOIA exemption,[20] the court upheld the university's exclusion of the documents from production. *Id.* at 442. In *UVA*, "many noted scholars and academic administrators submitted affidavits attesting to the harmful impact disclosure would have in these circumstances." *Id.* The court quoted an affidavit from John Simon, Vice President and

---

[20] Virginia Code § 2.2-3705.4(4) (West 2014) provides:

> Data, records or information of a proprietary nature produced or collected by or for faculty or staff of public institutions of higher education, other than the institutions' financial or administrative records, in the conduct of or as a result of study or research on medical, scientific, technical or scholarly issues, whether sponsored by the institution alone or in conjunction with a governmental body or a private concern, where such data, records or information has not been publicly released, published, copyrighted or patented.

27

Provost of the university and former Vice-Provost of Duke University, addressing the concerns relevant to academia:

> If U.S. scientists at public institutions lose the ability to protect their communications with faculty at other institutions, their ability to collaborate will be gravely harmed. The result will be a loss of scientific and creative opportunities for faculty at institutions in states which have not established protections under state FOIAs for such communications. . . . For faculty at public institutions such as the University of Virginia, compelled disclosure of their unpublished thoughts, data, and personal scholarly communications would mean a fundamental disruption of the norms and expectations which have enabled research to flourish at the great public institutions for over a century.
>
> . . .
>
> I can state unequivocally that recruitment of faculty to an institution like the University of Virginia will be deeply harmed if such faculty must fear that their unpublished communications with the scientific collaborators and scholarly colleagues are subject to involuntary public disclosure.

*Id.* at 442.

The same reasoning applies with equal force here.[21] When we focus on the resulting effect of the documents' release, the resolution of this case is decidedly clear.

---

[21] The *UVA* case best illuminates the public policy facet of the issue before us. If West Virginia State colleges and universities cannot retain their researchers and scientists because the FOIA exposes them to an unfair intrusion into the scientific process, then the problem of operating in a "fishbowl" pales in comparison to the challenge of attracting and retaining highly qualified faculty. *See generally* Dianna G. Goldenson, *FOIA Exemption Five: Will it Protect Government Scientists From Unfair Intrusion?*, 29 B.C. Envtl. Aff. L. Rev. 311 (2002) (arguing federal FOIA "deliberative process" exemption should be recognized by courts as mode of protecting government scientists from unfair intrusion into scientific research).

The involuntary public disclosure of Professor Hendryx's research documents would expose the decision-making process in such a way as to hinder candid discussion of WVU's faculty and undermine WVU's ability to perform its operations. We acknowledge that West Virginia's FOIA does not have an exemption specifically applicable to state institutions of higher education like Virginia does. Nevertheless, we find that documents generated during higher education academic research may be legally protected from disclosure under West Virginia Code § 29B-1-4(a)(8), when the public body demonstrates the criteria outlined above are satisfied. Accordingly, we affirm the order of the circuit court insofar as it found WVU properly invoked the FOIA "internal memoranda" exemption to withhold certain documents.

### B. The FOIA's Personal Privacy Exemption

The FOIA's "personal privacy" exemption permits the withholding of "information of a personal nature such as that kept in a personal, medical or similar file[.]" W.Va. Code § 29B-1-4(a)(2). In syllabus point six of *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985), we held: "The primary purpose of the invasion of privacy exemption to the Freedom of Information Act, *W.Va.Code,* [§ 29B-1-4(a)(2)],[22] is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Id.* (footnote added). We employ a two-pronged inquiry in deciding whether the public body has correctly withheld records under

---

[22] The syllabus point cites West Virginia Code § 29B-1-4(2) (1977), which contains the same language as West Virginia Code § 29B-1-4(a)(2) (2012).

this exemption. First, we determine whether the records in question are "personal," "medical," or "similar" files. Second, if so, we then balance or weigh the individual's right of privacy against "the public's right to know." *Hechler*, 175 W.Va. at 444, 333 S.E.2d at 810.

Our analysis is consistent with case law interpreting the federal FOIA counterpart. The federal FOIA exemption provides that government can withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (2009). *See* Martin E. Halstuk, *When Is An Invasion of Privacy Unwarranted Under the FOIA? An Analysis of the Supreme Court's "Sufficient Reason" and "Presumption of Legitimacy" Standards*, 16 U.Fla.J.L. & Pub. Pol'y 361, 371 (2005) ("When an agency makes a determination in a privacy-interests case[,] . . . it first must decide whether the requested records fall within the definition of 'personnel,' 'medical,' or 'similar' files. Second, the agency must balance the invasion of the individual's personal privacy against the public's interest in disclosure to determine whether the disclosure is justified.") (footnotes omitted).

Here, the circuit court concluded WVU properly withheld 740 documents on the basis of "academic freedom," a concept which it incorporated into the FOIA's

30

"personal privacy" exemption.[23] The circuit court conceded that its ruling was unprecedented. The circuit court's holding rested upon three distinct considerations: (1) the First Amendment encompasses an "academic freedom" privilege that is "transcendental, applicable to both constitutional law and to FOIA"; (2) the guarantee set forth in the West Virginia Constitution that provides all citizens have a right to a thorough and efficient educational system; and (3) the determination that individual peer reviewers have an expectation of privacy that will be harmed by the release of their comments, even though such comments are submitted anonymously.

We summarily reject the first two considerations outlined above. First, the West Virginia Freedom of Information Act does not provide an "academic freedom" exemption to its general disclosure provision, West Virginia Code § 29B-1-3 (2012). Although the First Amendment has been held to apply to protect colleges and universities against undue interference by the government,[24] First Amendment jurisprudence does not

---

[23] The circuit court noted, however, that the "deliberative process" exemption would shield the same documents from disclosure.

[24] The primary case cited by WVU on this issue, *Sweezy v. New Hampshire*, 354 U.S. 234 (1957), is not relevant to the instant case. *Sweezy* was decided on the basis of a denial of due process, in the form of an open-ended, unlimited investigation of the personal conduct and affairs of a faculty member. The Supreme Court in *Sweezy* dealt with a challenge to the use of a New Hampshire statute to hold a university professor in contempt for failing to answer questions posed to him (by the New Hampshire Attorney General, on behalf of the Legislature) concerning his belief in Communism and involvement with the Progressive Party. *Id.* at 242-244. This case did not involve the federal FOIA or any similar statute, nor did it involve the professor's research activities/scientific publications.

support its application in the context of this case. Because the exemptions to the Act are required to be strictly construed, this Court declines to create an "academic freedom" exemption not specifically set forth in the FOIA. *See* Syl. Pt. 5, *Queen*, 179 W.Va. 95, 365 S.E.2d 375. In *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996) we stated, "[i]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Id.* at 546-47, 474 S.E.2d at 476-77. This Court has further cautioned that "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div. v. Pub. Serv. Comm'n,* 182 W.Va. 152, 386 S.E.2d 650 (1989). Therefore, we find the broad principle of "academic freedom" would not justify WVU's wholesale avoidance of the plain language of the FOIA. [25]

Second, the guarantee of a "thorough and efficient system of free schools" under the West Virginia Constitution does not extend to institutions of higher education such as WVU. *See* W.Va. Const. art. XII, § 1; Syl. Pt. 7, *Randolph Co. Bd. of Educ. v. Adams*, 196 W.Va. 9, 467 S.E.2d 150 (1995) ("Whatever items are deemed necessary to

---

[25] Likewise, WVU wrongly suggests we should recognize an "academic freedom" exemption from FOIA to mirror "the justification for First Amendment protections afforded to journalists." The principles that support the extension of First Amendment protections to journalists and their confidential sources have no application to the matter before us.

accomplish the goals of a school system and are in fact an integral fundamental part of the elementary and secondary education must be provided free of charge to all students in order to comply with the constitutional mandate of a free school system pursuant to Section 1 of Article XII of the West Virginia Constitution."). Our Constitution does not establish a right to a higher education; the circuit court's reliance on this principle was entirely misplaced.

We now turn to the third consideration set forth above. The pertinent issue here is whether Highland's request for "[a]ll comments by peer reviewers concerning drafts of the documents" constitute "information of a personal nature" within the meaning of the privacy exemption at West Virginia Code § 29B-1-4(a)(2). WVU asserts the peer reviewers' privacy expectations would be violated by the release of their anonymous, confidential comments. The identity of peer reviewers is traditionally kept confidential in order to facilitate a candid exchange regarding a proposed article and its research. WVU maintains that to subject a reviewer's comments to public scrutiny, even while keeping the identity of the reviewer withheld, would render a reviewer more reluctant to challenge traditional ideas and propose unconventional concepts.

Highland responds that WVU's argument "stands the notion of 'personal' information on its ear." Applying the plain meaning of the word "personal," Highland argues this exemption cannot apply to peer review comments, submitted anonymously to

an academic or scientific journal, that are not kept in a "personal, medical, or similar file" pertaining to the person who prepared them. We agree.

This Court finds that WVU fails to meet the first prong of *Hechler* because the records in question are not "personal, medical or similar file[s]" that fall under the FOIA's "personal privacy" exemption. W.Va. Code § 29B-1-4(a)(2). In fact, these anonymous peer review comments contain no personal identifying information at all. Therefore, the only case relied upon by WVU on this issue is distinguishable from the instant case. In *Cook v. National Archives & Records Administration*, 758 F.3d 168 (2nd Cir. 2014), the court held records pertaining to research requests made on behalf of former President and former Vice President for records from their own administration were "similar files" to "personnel" files exempt under the federal FOIA "personal privacy" exemption, because "they contain[ed] detailed records containing personal information identifiable to the former officials and their representatives." *Id.* at 175.

Because WVU fails to meet the first prong of *Hechler*, our analysis stops here; we need not proceed to address the second prong to balance or weigh the individual's right of privacy against "the public's right to know." 175 W.Va. at 444, 333 S.E.2d at 810. Accordingly, we reverse the order of the circuit court insofar as it found that WVU properly withheld documents on the basis of "academic freedom," as it incorporated into the FOIA's "personal privacy" exemption set forth in West Virginia Code § 29B-1-4(a)(2).

34

We do, however, agree with the circuit court's finding that the same documents would fall under the FOIA "internal memoranda" exemption. As previously discussed, disclosure of the anonymous peer review comments submitted to Professor Hendryx, as he was drafting the articles, would undercut the decision-making process embodied by the FOIA's exemption and discourage open discussion necessary for scientific/academic research. *See Daily Gazette I*, 198 W. Va. at 572, 482 S.E.2d at 189 (stating that "in the spirit of further promoting frank and open discussions during an agency's deliberative process, courts have interpreted the deliberative process privilege to include opinions and recommendations to a governmental agency by outside consultants and experts so long as such opinions or recommendations are obtained during the government agency's deliberative, predecisional process").

### C. Reasonableness of FOIA Request

WVU initially moved to dismiss this action claiming the FOIA requests were unduly burdensome. The circuit court denied this motion and WVU engaged in document review and production. WVU produced 2,364 documents, totaling 11,090 pages and redacted 119 of those documents; WVU withheld 772 documents and claimed the FOIA exemptions discussed above. By the time the circuit court granted summary judgment in favor of WVU, the university claimed to have reviewed over 40,000 documents and identified over 200,000 potentially responsive documents.

35

In its March 19, 2014, order, the circuit court found "at this point," WVU had demonstrated that the FOIA requests were unduly burdensome, and noted it was concerned about the time and expense that "would be required to complete the process[.]" WVU maintains the circuit court correctly found that the past two years of litigation and document production proved Highland's FOIA requests were unduly burdensome. WVU argues that while the FOIA is designed to foster public transparency and accountability, the Act also reflects the Legislature's "concern that information requests not become mechanisms to paralyze other necessary government functions." *Farley*, 215 W.Va. at 422 n.14, 599 S.E.2d at 845 n.14.

Highland counters that the circuit court inexplicably failed to address its voluntary offer to limit or potentially eliminate the need for further document processing. In response to a letter from WVU's counsel pointing out the anticipated cost to process that information, Highland's counsel agreed that WVU could defer processing of those documents pending further rulings. In addition, Highland noted that if the documents that have been withheld thus far were provided, Highland may decide that it does not wish to receive any of the remaining documents. In accordance with this discussion, in its Cross-Motion for Summary Judgment, Highland only requested the release of previously-withheld documents as listed in the *Vaughn* indices, and that WVU be required to confer with Highland as to any additional documents.

36

To be sure, the FOIA requires a public body to conduct a reasonable search for responsive records. Further,

> [i]n response to a proper Freedom of Information Act request, a public body has a duty to redact or segregate exempt from non-exempt information contained within the public record(s) responsive to the FOIA request and to disclose the nonexempt information unless such segregation or redaction would impose upon the public body an unreasonably high burden or expense. If the public body refuses to provide redacted or segregated copies because the process of redacting or segregating would impose an unreasonably high burden or expense, the public body must provide the requesting party a written response that is sufficiently detailed to justify refusal to honor the FOIA request on these grounds. Such written response, however, need not be so detailed that the justification would compromise the secret nature of the exempt information.

Syl. Pt. 5, *Farley*, 215 W.Va. at 412, 599 S.E.2d at 835.

However, the FOIA does not require a public body to conduct what amounts to an unreasonably burdensome search in response to a request. *See Am. Fed'n of Gov't Emps. v. U.S. Dep't of Commerce*, 907 F.2d 203, 208-09 (D.C. Cir. 1990) (finding unreasonably burdensome FOIA request to locate "every chronological office file and correspondent file, internal and external, for every branch office, staff office [etc.]"); *Assassination Archives & Research Ctr. v. C.I.A.*, 720 F.Supp. 217, 219 (D.D.C. 1989) (recognizing public record laws are not designed to "reduce government agencies to full-time investigators on behalf of requesters."), *but see Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F.Supp.2d 1, 6 (D.D.C. 2003) (rejecting claim of undue burden when defendants "merely claim that [manually] searching . . . 25,000 paper files would be

'costly and take many hours to complete,' . . . [w]ithout more specification as to why a search certain to turn up responsive documents would be unduly burdensome").

When examining the burden on a public body to comply with a FOIA request, we note our FOIA provides "[t]he public body may establish fees reasonably calculated to reimburse it for its actual cost in making reproductions of such records." W.Va. Code § 29B-1-3(5). This Court recently held in syllabus point two of *King v. Nease*, 233 W.Va. 252, 757 S.E.2d 782 (2014): "Pursuant to West Virginia Code § 29B-1-3(5) (2012), a public body is vested with the authority and discretion to impose a search or retrieval fee in connection with a Freedom of Information Act request to provide public records provided that such fee is reasonable."[26]

Based on Highland's proposal to limit the need for WVU to continue further document processing, we find the circuit court erred in finding the FOIA requests were unreasonably burdensome and dismissing the action at this stage of the litigation. The "FOIA requester is the 'master' of the FOIA request" and "FOIA requests are frequently clarified or modified even after a lawsuit is filed." *People for Am. Way Found. v. U.S. Dep't of Justice*, 451 F.Supp.2d 6, 12 (D.C.D.C. 2006).

---

[26] Our Legislature recently amended this portion of the FOIA. *See* House Bill 2636, 2015 Leg. 82nd Sess. (W.Va. 2015) (effective June 12, 2015) (authorizing public body to establish fees reasonably calculated to reimburse actual costs in making reproductions of records; public body may not charge search or retrieval fee as part of costs associated with making reproduction of records).

Accordingly, we reverse the circuit court's order insofar as it dismissed this action and remand the case for further proceedings. We find Highland should have the opportunity to taper its FOIA requests correspondent to our holdings in this case. Thereafter, the circuit court should revisit its decision of whether Highland's FOIA requests are unduly burdensome. Applying this Court's ruling, the circuit court will find that WVU's document production obligations are dramatically reduced. If the circuit court does not dismiss this action, it should consider appointing a special commissioner pursuant to Rule 53 of the West Virginia Rules of Civil Procedure to review any documents withheld by WVU, in camera, to determine whether they are exempt from disclosure under the FOIA. Further, the parties are expected to confer regarding the fees Highland may incur with respect to any further document processing and production by WVU.

### D. Highland's Request for Attorney Fees and Costs

The FOIA provides that any person who is a successful FOIA litigant must be awarded attorney fees and costs. Specifically, West Virginia Code § 29B-1-7 provides:

> [a]ny person who is denied access to public records requested pursuant to this article and who successfully brings a suit filed pursuant to section five of this article shall be entitled to recover his or her attorney fees and court costs from the public body that denied him or her access to the records.

In syllabus point seven of *Daily Gazette Co. v. West Virginia Development Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999) (hereinafter "*Daily Gazette II*"), we held:

For a person to have brought a suit for the disclosure of public records under the West Virginia Freedom of Information Act (FOIA), as permitted by W.Va. Code § 29B-1-5 (1977) (Repl.Vol.1998), so as to entitle him/her to an award of attorney's fees for "successfully" bringing such suit pursuant to W.Va. Code § 29B-1-7 (1992) (Repl.Vol.1998), he/she need not have prevailed on every argument he/she advanced during the FOIA proceedings or have received the full and complete disclosure of every public record he/she wished to inspect or examine. An award of attorney's fees is proper even when some of the requested records are ordered to be disclosed while others are found to be exempt from disclosure or are released in redacted form. In the final analysis, a successful FOIA action, such as would warrant an award of attorney's fees as authorized by W.Va. Code § 29B-1-7, is one which has contributed to the defendant's disclosure, whether voluntary or by order of court, of the public records originally denied the plaintiff.

Highland contends the circuit court erred in neglecting to address its request for attorney fees and costs. While WVU disagrees, Highland argues it successfully brought this FOIA suit because WVU originally denied it access to *any* public records, and, WVU was forced to produce more than 2,200 documents in compliance with the circuit court's November 7, 2012 order. WVU argues that the circuit court's final ruling that Highland's FOIA requests were unduly burdensome eliminates its claim for attorney fees and costs.

"Typically, we have steadfastly held to the rule that we will not address a nonjurisdictional issue that has not been determined by the lower court." *State ex rel. Clark v. Blue Cross Blue Shield of W.Va., Inc.,* 203 W.Va. 690, 699, 510 S.E.2d 764, 773 (1998), *accord* Syl. Pt. 3, *Voelker v. Frederick Bus. Props. Co.,* 195 W.Va. 246, 465

40

S.E.2d 246 (1995). Accordingly, we remand this case for further proceedings to take up Highland's request for attorney fees and costs in accordance with the guidelines set forth in *Daily Gazette II*. The circuit court must determine if Highland instituted "a successful FOIA action," that would warrant such an award as authorized by West Virginia Code § 29B-1-7, and enter an order addressing this request.

## IV. CONCLUSION

For the reasons set forth above, the March 19, 2014, order of the Circuit Court of Monongalia County is affirmed, in part; reversed, in part; and this action is remanded for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part; and remanded.

41